No. 12621

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

IN THE MATTER OF THE ESTATE OF
MARTHA E. RICKNER, Deceased.

---

Appeal from:   District Court of the Tenth Judicial District,
              Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        Pedersen and Herndon, Billings, Montana
        Donald Herndon argued, Billings, Montana
        P. Bruce Harper argued, Billings, Montana

    For Respondent:

        Peter L. Rapkoch argued, Lewistown, Montana

---

Submitted:   January 17, 1974

Decided: FEB 13 1974

Filed: FEB 13 1974

*Thomas J. Kearney*
                                Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment in favor of the administrator of the estate of Martha E. Rickner.

Martha E. Rickner died intestate in April, 1970. On December 26, 1972, John A. Rickner, petitioner and respondent and the husband of deceased (hereinafter referred to as Rickner) petitioned for letters of administration. The petition shows, among other facts, that Rickner believed that the estate would not exceed the value of $10,000 and that deceased was the owner of certain property held in joint tenancy with Rickner. In his petition Rickner sought termination of the joint tenancy. Rickner was appointed administrator of his deceased wife's estate on January 10, 1973.

Agnes Birkeland, objector and appellant and the daughter and heir-at-law of the deceased (hereinafter referred to as Birkeland) objected to the issuance of letters of administration.

On May 23, 1973, the inventory and appraisement was filed showing that deceased owned real and personal property as a joint tenant with Rickner. Included in the personal property was deceased's portion of the seller's interest in that part of a contract for deed, dated November 19, 1969, (hereinafter referred to as contract) which pertained to 147 acres of land owned jointly by deceased and Rickner.

On June 5, 1973, Birkeland filed her objection to the inventory and appraisement. The grounds for this objection was that the inventory and appraisement mistakenly appraised the value and character of the deceased's interest in the contract.

The contract, wherein deceased and Rickner were sellers, and Sylvan Anderson was the buyer, covered two parcels of agricultural land. One parcel owned by Rickner alone consisted of 306 acres. The other parcel owned by Rickner and deceased, as

joint tenants, comprised 147 acres.

The terms of the contract indicate that the sellers received $2,000 upon the execution of the contract and that an additional $10,000 was to be paid to the sellers without interest on or before December 1, 1969. The balance of $48,000, together with interest at 6% per annum commencing March 1, 1970, was to be paid to sellers in 20 annual installments with the first installment due on or before December 1, 1970.

The contract extended to and became binding upon the heirs, executors, administrators and assigns of the respective parties thereto. A warranty deed from sellers to buyer was to be placed in escrow at the Miners and Merchants Bank, Roundup, Montana. Any notice to sellers to be served pursuant to the contract was to be sent to Rickner and the deceased. Both the deceased and Rickner signed the contract. At the time of deceased's death, $48,000 plus interest at the rate of 6% from March 1, 1970, remained unpaid.

On June 14, 1973, Birkeland filed and served her petition for amendment of the inventory and appraisement, stating that the inventory and appraisement erroneously reflected that the deceased had a joint tenancy interest in the contract, the whole contract. On July 16, 1973, a hearing was held in the district court of the tenth judicial district in and for the county of Fergus. The district court admitted into evidence a copy of the contract and heard oral argument of the objection. On August 20, 1973, the district court entered its findings of fact, conclusions of law, and judgment which denied Birkeland's objection and granted Rickner's petition for termination of joint tenancy. The district court concluded "That absent any evidence of intent to terminate the joint tenancy the proceeds of the property so held should be deemed held in joint tenancy" and decreed "That the proceeds of

the joint tenancy acreage sold was held in joint tenancy."

There has been expressed in argument some confusion as to the exact nature of the issue presented both in the district court and for review here. Simply stated the issue is: Was the deceased a tenant in common as to the proceeds of the whole contract or was the deceased merely a joint tenant as to the proceeds of the contract resulting from the sale of the joint tenancy property? The district court held that the deceased's interest in the contract was that of joint tenancy as to the 147 acres, and thus, terminated the joint tenancy. We agree with the district court.

Birkeland's contention is that the contract is personal property and that by the terms of the contract, deceased during her lifetime had a right to receive one-half of the proceeds being paid pursuant to the contract and that upon her death the interest that deceased held in the contract passed to her personal representative as an asset which should be included upon the inventory and appraisement as estate property and subsequently distributed to her heirs. It is Birkeland's position that the contract created a tenancy in common as to the whole contract.

Rickner contends that the part of the contract relating to the 306 acres owned by him separately was not owned by the deceased and Rickner as tenants in common, but is separate property and that part of the contract relating to the 147 acres of land under the contract owned in joint tenancy is joint tenancy property and went to Rickner upon deceased's death by reason of survivorship.

In its judgment the district court relied on Hewitt v. Biege, 183 Kan. 352, 327 P.2d 872, 875. In the Hewitt case Ray and Pearl Biege, husband and wife, owned land in joint tenancy and sold it under contract, placing the contract, together with a warranty deed to the property, in escrow. The escrow agent was

- 4 -

to deposit the monthly payments in a joint account of the sellers. The contract contained no provision as to the nature of the sellers' interests in the right to receive payments. Mrs. Biege died while the contract was still in effect.

The Kansas court stated the issue to be whether such contract constituted a severance of the joint tenancy and held that mere change in the form of the property is not conclusive proof of the intent to sever the joint tenancy.

The executors of Pearl Biege's estate claimed that the contract of sale not specifying otherwise created a tenancy in common. The Kansas court, after noting that under the Kansas statute a joint tenancy may be created in personal as well as real property, said:

> " * * * It appears to us much more logical to say that when all joint tenants concur in an act and none dissent there has been no hostile or adverse act which would terminate the tenancy. Changing the form of the property is an act unrelated to the holders' status as joint tenants. Joint tenancy is a relationship between certain people who have as a result of that tenancy certain rights in the res. If under our statute joint tenancy may be had in both personalty and realty, there is no reason to alter the personal relation of joint tenancy because of an act done jointly to the property.

> "* * *

> "It would appear that in view of our statute a joint tenancy is severed only in the manner in which it was created, i.e., by clear intent of the parties. * * *"

It has long been established by this Court that a contract for the sale of real property converts the seller's interest from an owner of real property to that of an owner of personalty, this being the doctrine of equitable conversion. Kern v. Robertson, 92 Mont. 283, 12 P.2d 565; State v. Kistner, 132 Mont. 437, 318 P.2d 223; McDonald v. Hoffman, 133 Mont. 65, 320 P.2d 357.

Section 36-108, R.C.M. 1947 provides that a husband and wife may hold personal as well as real property in joint tenancy.

The effect of the district court's holding is that the proceeds of the sale of joint tenancy property pursuant to a contract are owned in joint tenancy, in the absence of an agreement to the contrary. In addition to Hewitt, the district court also relied on Lawrence v. Andrews, 84 R.I. 133, 122 A.2d 132. As urged by Birkeland, there is authority which is contrary to the position taken by the district court. See In re Baker's Estate, 247 Iowa 1380, 78 N.W.2d 863 and Buford v. Dahlke, 158 Neb. 39, 62 N.W.2d 252.

In Montana there is no case directly in point, but it is this Court's opinion that the better line of reasoning is that followed by the district court, and in the absence of an agreement to the contrary, proceeds of a sale of joint tenancy property pursuant to a contract are held in joint tenancy. Mere change of form through equitable conversion does not automatically change the nature of the interest.

In the instant case, however, there appear facts not present in the above cited cases, for here the contract not only included property held in joint tenancy, but it also included property owned solely by Rickner. Having established that deceased's interest in the proceeds of the contract was that of joint tenancy as to the 147 acres held in joint tenancy, absent a contrary intention, it is only logical to conclude that the deceased's interest in the proceeds of the contract resulting from the sale of the 307 acres owned solely by Rickner is the same as the deceased's original interest, which is no interest at all.

Birkeland, however, asserts that deceased was an equal party to the contract and relies upon the following facts: both Rickner and deceased were named parties to the contract as sellers; both acknowledged receipt of the initial payment; payments were

- 6 -

made to both of them by making payments to their escrow agent; deceased was one of the parties to whom notices concerning the contract could be sent; deceased bound herself to the release of her dower interest in all the real property which is the subject of the contract; and, the contract was binding upon the heirs, executors, administrators and assigns. In addition, Birkeland contends that co-sellers are either sellers as joint tenants or they are sellers as tenants in common. Birkeland further contends that since there is no express declaration appearing in the contract to indicate an intent to create a joint tenancy property interest, the deceased's interest therein must be held to be a tenancy in common.

We refer to the case of Moxley v. Vaughn, 148 Mont. 30, 35, 416 P.2d 536, wherein Cora Read Pew was the sole owner of real property. She entered into a contract for the sale of the property. Charles E. Pew, her husband, joined in the execution of the contract. Payments pursuant to the contract were to be made to an account upon which either Cora Read Pew or Charles E. Pew or their survivor could draw. This Court held that no joint tenancy interest was created in the contract by requiring the payment to be made to a joint account.

In the Moxley case, we construed sections 67-308 and 67-313, R.C.M. 1947 and with reference to these particular statutes said at page 35:

> "The above-quoted statutes provide in effect that a tenancy in common will be created unless the intent to create a joint tenancy is clearly shown. The rule of law is clear, the difficulty is in applying it.
>
> "In order to conclude that a joint tenancy was created it must be established that it was the intent of the grantor to create such an interest. * * *
>
> " * * *
>
> "The application of the law to this particular case requires careful scrutiny of the contract of sale

- 7 -

of the Fuller Avenue property. It is from this instrument that the interest of the grantor must be gleaned. * * * If a joint tenancy interest is to be established in the contract, and the property subject to it, evidence of such intent on the part of the grantor must clearly show from the language used. A provision for payments to be made into a joint account does not by itself operate to create a joint tenancy in the interest being conveyed. Section 67-308, supra, requires an express declaration that the interest being created is to be a joint tenancy, and in the absence of such express declaration section 67-313, supra, provides the interest created, if any, shall be an interest in common. The contract for the sale of the Fuller Avenue property does not contain an express declaration establishing a joint tenancy in the property being sold thereunder.

"Thus, no interest having been created by the contract in Charles E. Pew, the vendor's interest in the Fuller Avenue property, upon the death of Cora Read Pew passed into her estate. * * *" (Emphasis supplied.)

In light of our decision in Moxley we find no merit in Birkeland's contention that the sellers are either joint tenants or tenants in common as to the proceeds of the contract. There is no provision in the contract in the instant case showing an intent by deceased and Rickner to constitute a severance of the joint tenancy. In addition, there was no interest created by the contract in the deceased as to the property solely owned by Rickner. The only interest that deceased had in the contract was a joint tenancy as to the proceeds of the property held in joint tenancy prior to the sale.

Accordingly, the judgment of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

- 8 -