No. 81-385

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN THE MATTER OF THE ESTATE OF:

GILLXE V. WOOTEN, Deceased.

---

Appeal from: District Court of the Fourth Judicial District,
            In and for the County of Missoula
            Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellant:

        Moses Law Firm, Billings, Montana
        Charles F. Moses, Billings, Montana
        Victor F. Valgenti, Missoula, Montana

    For Respondent:

        Lawrence V. Johnson, Hamilton, Montana
        Boone, Karlberg & Haddon, Missoula, Montana
        Allen E. Cone, Los Angeles, California
        George Goodrich, Missoula, Montana
        William Rossbach, Missoula, Montana
        Milodragovich, Dale & Dye, Missoula, Montana

---

                    Submitted on briefs:  March 5, 1982

                               Decided:  April 30, 1982

Filed: APR 30 1982


_Thomas J. Kearney_
                                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Robert J. Grafft, Sr., appeals from an order of the District Court of the Fourth Judicial District, Missoula County. The order removed Grafft as personal representative of the estate of Gille V. Wooten and declared that Grafft had only a life estate in certain real property which Wooten was in the process of selling at the time of his death.

Gille Wooten, an attorney, made and executed a holographic will on February 13, 1976. The pertinent provisions of the will are set forth below:

"Third Paragraph

"I nominate, constitute, and appoint Robert
J. Grafft, Sr. to act as and to be my
Executor, to serve without bond. If he fails
or ceases or is unable to act, then I appoint
the First National Bank of Missoula, Montana
as Executor.

"Fourth Paragraph

"I give devise and bequeath all of my land and
improvements to my friend, Robert J. Grafft,
Sr., for his whole lifetime. I also give and
bequeath to him all of my personal property,
including my interest in cattle, and all stock
held by me in any and all corporations which I
have at the time of my death.

". . .

"Sixth Paragraph

"I give devise and bequeath the remainder
interest in my land at the time of Robert J.
Grafft, Sr's. death, in equal portions to the
Audubon Society, Ducks Unlimited, and the
National Wildlife Federation.

"Seventh Paragraph

"I grant my Executor full power to act for the
betterment of my estate without order of Court,
including sale of personal and real property."

Gille Wooten died in Missoula County, Montana, on February 22, 1976. On March 25, 1976, Robert J. Grafft, Sr., was appointed personal representative of the estate.

Prior to his death, Gille Wooten owned 880 acres of land in the Rattlesnake Creek drainage near Missoula, Montana. At the time of his death, 350 acres of this land [which portion is hereafter referred to as the Gilroy tract] was subject to a contract for deed, dated October 7, 1975, in which Wooten was the seller and Joan Gilroy was the buyer. This contract was current and not in default on the date of Wooten's death. After Wooten's death, however, the buyer failed to make the payment due on April 2, 1976. This default resulted in litigation in which judgment was entered on March 7, 1978, terminating Gilroy's interest in the contract and the real property.

On November 20, 1978, Grafft, as personal representative, filed in the District Court a petition for construction of will and sale of real property, wherein he prayed inter alia, that the Court:

". . .

"2. Determine the rights and interest of all parties in and to the proceeds of any sale of land exceeding estate indebtedness.

"3. Determine the nature of the interest passing as personal property to Robert J. Grafft, Sr., with respect to the contract for sale of the land executed by the decedent during his lifetime and cancelled thereafter.

"4. Authorize the Personal Representative to advertise and offer for sale all real property involved in the above-entitled estate for the highest price obtainable and in the course thereof to negotiate with and to solicit and accept bids from prospective purchasers upon the condition that final sale shall be subject to Court approval."

The issues on appeal are narrower than the relief prayed for in the petition would indicate.

On May 6, 1981, in response to a petition filed by the remaindermen charities, the District Court ordered Grafft removed as personal representative of the estate.

-3-

In a separate order dated May 6, 1981, the Court concluded that Wooten intended all of the land, including the Gilroy tract, to pass as a remainder interest to the charities. Without so stating, but by necessary implication, the District Court ruled that Wooten, at the time of his death, held the Gilroy tract as real property rather than as personalty.

The Court stated:

". . . The Court in search for the intent of the testator must consider all the background facts and the surrounding circumstances at the time he executed the will; then reading the will in its entirety, must endeavor to take from the words the meaning which the testator tried to put into them. MCA 72-11-305 (1979).

". . .

"4. The decedent intended to devise specific categories of his estate assets: cash, land, and personalty. It is noteworthy that his description of personalty specifically includes his interests in cattle and stock, and does not refer to his interests in land. This is significant, for it shows that the decedent in his mind had different ideas about his estate assets. The decedent's failure to refer to his interests in land shall not defeat his intent. The decedent intended for his land to pass as a remainder interest to the Charities. Although the decedent owned only a Seller's interest in [the Gilroy tract], his use of the word 'land' establishes the intent that all land in his estate pass to the Charities for the obvious reasons . . .

"5. The power given the Personal Representative to act for the betterment of the estate . . . is in effect identical to that granted all personal representatives by MCA 72-3-613 (1979). Thus, no special power was given to the Personal Representative to benefit himself as the life tenant. Any sale of the land shall result in the proceeds being held in trust for the remaindermen, and the income (before principal) being used to satisfy charges to the estate."

Grafft raises two issues on appeal:

1. Did the District Court err in removing Grafft as the personal representative of the estate?

2. Did the District Court err in holding that the

-4-

Gilroy tract, in which Wooten had a seller's interest, should pass as a remainder interest to the charities?

We affirm the District Court on the first issue and reverse on the second.

In its order removing Grafft as personal representative, the District Court stated:

"In regard to the Charities' petition to remove and/or surcharge the Personal Representative, it is apparent that the Personal Representative is unable to effectively divorce his duties as Personal Representative from his interest as the life tenant in the estate. The Charities' petition alleges frequent misuses of funds by the Personal Representative which haven't, in their entirety, been explained satisfactorily.

"It is hereby ordered that Robert J. Grafft, Sr., is relieved of the remainder of the duties as Personal Representative."

Grafft contends that this statement by the District Court does not satisfactorily set forth the basis for his removal as personal representative and that some further finding must be made by the District Court. We do not agree.

It was not necessary for the District Court to include in its findings of fact all of Grafft's alleged transgressions as personal representative. Findings of fact which ascertain ultimate facts and sufficiently conform to the pleadings and the evidence to support the judgment are regarded as sufficient, though not as full and complete as might be desired. Holloway v. University of Montana (1978), 178 Mont. 198, 203, 582 P.2d 1265, 1268.

The removal of a personal representative for cause is governed by section 72-3-526, MCA. Within the bounds of the statute a trial judge should be given broad discretion as to the grounds upon which he may remove a personal representative,

-5-

but the grounds must be valid and supported by the record. Matter of Estates of Aaberg (1980), 25 Wash.App. 336, 607 P.2d 1227, 1228. The record in the present case contains references to numerous expenditures of estate funds by Grafft which are of questionable legitimacy. Not the least of these is the use of estate funds to finance Grafft's defense on certain criminal charges.

After viewing the evidence, the District Court concluded that Grafft's conduct warranted his removal as personal representative. We find nothing in the record that would lead us to conclude otherwise.

In resolving the second issue, the District Court relied on what it believed to be Wooten's testamentary intent as expressed in his will. The District Court concluded that the "land" referred to in Wooten's will was intended by him to include the Gilroy tract, in which Wooten had only a seller's interest. In other words, the District Court ruled that the Gilroy tract was meant to pass as real property under Wooten's will.

We do not find the decedent's intent so clear as did the District Court. Furthermore, we find that this is a proper case for application of the doctrine of equitable conversion. We have applied this doctrine many times in the past. A suitable example of its operation can be seen in Kern v. Robertson (1932), 92 Mont. 283, 12 P.2d 565, where we stated:

> "The authorities are in accord that an
> enforceable contract for the purchase and
> sale of real property passes to the purchaser
> the equitable and beneficial ownership thereof,
> leaving only the naked legal title in the seller,
> as trustee for the purchaser, and as security
> for the unpaid purchase price. If the purchaser
> dies while the contract is in force and effect,
> his interest passes to his heirs as real property.

If the seller dies while the contract is in force and effect, his interest passes to his personal representative as personal property, and not to his heirs." 92 Mont. at 288, 12 P.2d at 567.

A more recent case, In Re Estate of Rickner (1974), 164 Mont. 51, 518 P.2d 1160, states:

"It has long been established by this Court that a contract for the sale of real property converts the seller's interest from an owner of real property to that of an owner of personalty, this being the doctrine of equitable conversion. [Citations omitted.]" 164 Mont. at 55, 518 P.2d at 1162.

By our statutes, the property of a person devolves upon his death to the persons to whom it is devised by his last will, section 72-3-101(2), MCA, subject to the requirement that the devisee survive the testator by 120 hours. Section 72-2-511, MCA. A testamentary disposition, when vested, cannot be divested unless upon the occurrence of a contingency prescribed by the testator. Section 72-11-331, MCA. A specific devisee has the right to the remaining specifically devised property and to any balance of the purchase price (together with any security interest) owing from the purchaser to the testator at death by reason of sale of the property. Section 72-2-516(2)(a), MCA.

Applying these statutory rules, we find that: the personal property of the decedent was specifically devised to Robert Grafft; under Montana law, the right of the decedent to the Gilroy tract was as a seller under a contract, and so was personal property; the right to the balance of the purchase price at decedent's death passed to Robert Grafft (after 120 hours) as personal property; the decedent's security interest (the default provisions of the sale contract) also passed to Robert Grafft; the default of the buyer after decedent's death was a default in a contract that had by

-7-

then vested in Robert Grafft, subject to the administration of the estate.

This holding is consonant with our pre-Uniform Probate Code decisions that the interest of a vendor in a contract to sell real estate is intangible personal property for purposes of inheritance taxation, and that the character of decedent's property at the time of his death determines whether it is real or personal property. In Re Briebach's Estate (1957), 132 Mont. 437, 318 P.2d 223.

It is only the circumstance that the Gilroy contract ended by reason of the default of the purchaser that causes the problem of ownership here. Had the buyer not defaulted, but complied with the contract of purchase, the resulting monies coming to the estate would certainly have accrued to Grafft as personal property.

We affirm in part and reverse in part and remand this cause to the District Court with instructions to proceed with the probate of this estate in accordance with this opinion. Costs to appellant.

_____
                    Justice

We Concur:

_____
      Chief Justice

_____


_____
      Justices

-8-