No. 94-410

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CHARLEY JOHNSON, PARK COUNTY
SHERIFF, THE STATE OF MONTANA,

Petitioner and Respondent,

-v-

EQUIPMENT USED TO CULTIVATE
MARIJUANA; REAL PROPERTY, A TRACT
DESCRIBED AS TRACT ONE (1) OF CERTIFICATE
OF SURVEY NO. 370, ALL IN SECTION TWENTY-TWO
(22), TOWNSHIP TWO (2) SOUTH, RANGE NINE (9)
EAST; TIMOTHY JEROME HULBERT & RUSSELL J.
YOUNG,

Defendant and Appellant

FILED

JUN 20 1995

CLERK OF
STATE OF MONTANA,

APPEAL FROM:  District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Bryon L. Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Karl Knuchel, Livingston, Montana

For Respondent:

Wm. Nels Swandel, Park County Attorney, Livingston,
Montana; Honorable Joseph P. Mazurek, Attorney
General, John Paulson, Assistant Attorney General,
Helena, Montana

Submitted on Briefs:  February 16, 1995

Decided:  June 20, 1995

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a decision of the Sixth Judicial District Court, Park County, to allow the seizure and sale of real property involved in a drug felony.  We affirm in part and remand.

The only issue for review is whether the District Court erred in permitting the real property to be seized and sold despite the owner's issuance of a quitclaim deed to the seller following the owner's arrest and charge for the crime.

Appellant Russell J. Young (Young) and Timothy J. Hulbert (Hulbert) were involved in a business together. That relationship ended in March of 1988.  Following dissolution, Hulbert made arrangements to purchase the business property from Young, subject to payment of an outstanding bank loan owed to Young.  The sale of the property was by contract for deed from Young to Hulbert.

On January 12, 1993, law enforcement officers from the Park County Sheriff's Office and Livingston Police Department searched Hulbert's residence and discovered that he was growing marijuana in his home.  Hulbert was thereafter arrested for possession with intent to sell.  On January 21, 1993, Hulbert issued a quitclaim deed for his residence to Young who paid Hulbert $5,000.

A petition to institute forfeiture proceedings was filed on February 23, 1993, against Hulbert for both the real property and the drug paraphernalia found in the residence.  Young was added as a respondent on March 10, 1993.  Hulbert never filed an answer and a default was entered.  Young filed an answer and counterclaim which was subsequently withdrawn.

2

The parties stipulated that the only issue to be considered was whether the quitclaim deed to Young prevented the State's subsequent seizure of the real property. Following a bench trial after which Hulbert was convicted of possession with intent to sell, the court considered the quitclaim deed and found that although Young had a legitimate interest in the property, his quitclaim deed did not cut off the State's right to forfeit the real estate. The court reasoned that the relation back doctrine applied and that although the quitclaim deed preceded the State's petition for forfeiture, the State's interest in seizing the property was ripe upon the commission of the crime, January 12, 1993, and a transfer of the property subsequent to the crime was void.

In its June 13th Findings of Fact and Conclusions of Law, the court ordered the Park County Sheriff to sell at public auction the seized property described as Tract one (1) of certificate of survey no. 370, located in section 22, T2S, RYE, Park County, Montana. The court stated that Young was due the balance owed him on the said contract for deed, plus whatever interest had accumulated.

Young appeals the forfeiture of the real property deeded to him by the quitclaim deed.

Did the District Court err in permitting the real property to be seized and sold despite the owner's issuance of a quitclaim deed to the seller following the owner's arrest and charge for the crime?

Young argues on appeal that he is an innocent owner pursuant

3

to § 44-12-102(1)(i), MCA.  The State argues that it has not forfeited Young's interest in the property; Young's security interest in the residence was fully recognized by the court in its June 13, 1994 Order.  The State points out that the interest recognized, however, is not that of owner because Hulbert was the owner on January 12, 1993; Young has a security interest in the property.

The District Court correctly based its decision on the "relation back doctrine" set out for the first time in United States v. Stowell (1889), 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed 555. The doctrine, followed for many decades, states that whenever a statute determines that upon commission of a certain act specific property used in or connected with that act shall be forfeited, "the forfeiture takes effect immediately upon the commission of the act."  Stowell, 133 U.S. at 16, 10 S.Ct. at 247, 33 L.Ed at 559.

We adopt the doctrine of relation back as established in Stowell with regard to the facts of the present case.  As a result, we conclude that by relation back, the crime was committed on the date of discovery, that being, January 12, 1993. As a result, upon that day, the State had the right to seize the real property which had been directly used to facilitate the offense.  The controlling provision is the following portion of § 44-12-102, MCA:

> Things subject to forfeiture.  (1)  The following are subject to forfeiture:
> . .
> (i) ˙ real property, including any right, title, and interest in any lot or tract of land and any appurtenances or improvements, that is directly used or intended to be used in any manner or part to commit or facilitate the commission of or that is derived from or

4

maintained by the proceeds resulting from a violation of Title 45, chapter 9, that is punishable by more than 5 years in prison. An owner's interest in real property is not subject to forfeit by reason of any act or omission unless it is proved that the act or omission was the owner's or was with his actual knowledge or express consent.

The next question is whether Young's interest in the property can be classed as an owner's interest in real property. As previously mentioned, Young executed a contract for deed under which he was the seller and Hulbert was the buyer. The doctrine of equitable conversion establishes that as a result of the contract for deed, Young had only the naked legal title which he held as trustee for the purchaser and as security for the unpaid purchase price. The rule was stated in In the Matter of the Estate of Wooten (1982), 198 Mont. 132, 137-38, 643 P.2d 1196, 1199:

> we find that this is a proper case for application of the doctrine of equitable conversion. We have applied this doctrine many times in the past. A suitable example of its operation can be seen in Kern v. Robertson (1932), 92 Mont. 283, 12 P.2d 565, where we stated:
>
> > "The authorities are in accord that an enforceable contract for the purchase and sale of real property passes to the purchaser the equitable and beneficial ownership thereof, leaving only the naked legal title in the seller, as trustee for the purchaser, and as security for the unpaid purchase price. . . "
>
> A more recent case, In Re Estate of Rickner (1974), 164 Mont. 51, 518 P.2d 1160, states:
>
> > "It has long been established by this Court that a contract for the sale of real property converts the seller's interest from an owner of real property to that of an owner of personalty, this being the doctrine of equitable conversion. . .

Based upon the foregoing authority, we conclude that the

interest owned by Young at the time of the commission of the crime on January 12, 1993, was as an owner of personalty rather than as an owner of real property. As a result, we conclude that Young's specific interest in the property was not covered by the above last sentence of § 44-12-102(1)(i), MCA.

This leads us to the statutes which control the procedure for forfeiture. The pertinent parts of § 44-12-205, MCA are as follows:

> **44-12-205. Disposition of property following hearing.** (1) If the court finds that the property was not used for the purpose charged or that the property listed in 44-12-102(1)(g) was used without the knowledge or consent of the owner, it shall order the property released to the owner of record as of the date of the seizure.
>
> (2) If the court finds that the property was used for the purpose charged and that the property listed in 44-12-102(1)(g) was used with the knowledge or consent of the owner, the property shall be disposed of as follows:
>
> (a) If proper proof of his claim is presented at the hearing by the holder of a security interest, the court shall order the property released to the holder of the security interest if the amount due him is equal to or in excess of the value of the property as of the date of seizure, it being the purpose of this chapter to forfeit only the right, title, or interest of the owner. If the amount due the holder of the security interest is less than the value of the property, the property, if it is sold, must be sold at public auction by the law enforcement agency that seized the property in the same manner provided by law for the sale of property under execution or the law enforcement agency may return the property to the holder of the security interest without proceeding with an auction.

Paragraph (1) of the above code section first states that if the court finds the property was _not_ used for the purpose charged, it shall order the property released to the owner of record. The court here of course found the property _was_ used for the purpose charged so that provision does not apply.

Next paragraph (1) provides that if the court finds that the

Next paragraph (1) provides that if the court finds that the property listed in § 44-12-102(1)(g), MCA, was used without the knowledge or consent of the owner, it shall order the property released to the owner of record. This is a confusing portion of the statute. First, it is essential to note that § 44-12-102(1)(g), MCA, provides:

> (1) The following are subject to forfeiture:
> . .
> (g) everything of value furnished or intended to be furnished in exchange for a controlled substance in violation of Title 45, chapter 9; all proceeds traceable to such an exchange; and all money, negotiable instruments, and securities used or intended to be used to facilitate a violation of Title 45, chapter 9 .

Because the property with which we are here involved is not within the definition of § 44-12-102(1)(g), MCA, we must conclude that no part of § 44-12-205(1), MCA, is applicable here.

This then leads us to paragraph (2) of § 44-12-205, MCA. In substance paragraph (2) provides that if the court finds as it did here that the real property was used for the purposes charged, the property shall be disposed of as provided in subparagraphs (a) to (c). In the present case, Young proved that he was the holder of a secured interest by virtue of his position as a seller under a contract for deed. The specific provision of subparagraph (a) is that the property should be released to the holder of such a security interest if the amount due is equal to or in excess of the value of the property as of the date of seizure. The subparagraph further provides that if the amount due the holder of the security interest is less than the value of the property, then the property is to be sold or the property may be returned to the holder of the

7

security interest.  The key point here is that the District Court is required to determine the value of the real property as of the date of seizure.  In the present case, if that determination had been made, and if it had been determined that the value of the real property was less than the security interest, the court should have ordered the property delivered to Young.  On the other hand, if the District Court determined that the value of the real property exceeded the security interest, then the property could have been sold, Young could have been paid out of the proceeds with the balance going to the State.  The record before us establishes that the District Court did not establish the value of the real property on the date of seizure, or the specific amount owing to Young under his security interest.

We hold that because of our application of the Stowell doctrine, Hulbert's issuance of a quit claim deed to Young was ineffective so far as the drug seizure is concerned and that the District Court did not err in permitting the real estate to be seized.  We further hold that the record does not yet establish a basis for the sale of the property and we remand to the District Court in order that it may determine the value of the real property as of the date of seizure, and the amount owing to Young under his security interest.  At that point, the District Court shall then determine under the statute whether or not it is appropriate to surrender the real property to Young as the holder of the security interest, or to order the sale of the property with the requirement that the proceeds shall be used first to pay off the entire amount

8

owing to Young under his security interest with the balance to go to the State of Montana.

We remand to the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9

Justice W. William Leaphart, dissenting.

I dissent. The Court's analysis is based upon the premise that Young was not the owner of the property in question. Rather, that, as a seller under a contract for deed, he merely had a security interest in the property and that his security interest is personalty only. Using that assumption, the Court avoids the issue of whether Young is an "innocent owner" under the provisions of §§ 44-12-102(1)(i) and 44-12-205, MCA, and then proceeds to conclude that he was legitimately treated as a secured party under § 44-12-205(2)(a), MCA.

Although there is support for such a conclusion, I do not believe that that is the result envisioned by the legislature when it adopted Chapter 12 of Title 44, MCA. I say this for two reasons. First of all, although the statutes on forfeiture make reference to "owner," they also make reference to "owner of record." See 44-12-205(1), MCA. "Owner of record" is not defined. I take that term to mean the holder of the legal title. As the Court correctly concludes, under the doctrine of equitable conversion, Young, as the seller under a contract for deed, becomes an owner of personalty with naked legal title to the property. Estate of Wooten (1982), 198 Mont. 132, 643 P.2d 1196. Legal title remains vested in the vendor (Young) until such time as the contractual provisions are fully performed. In my view, however, that bare legal title is sufficient to qualify Young as the "owner of record" as that term is used in Title 44, Chapter 12, MCA.

The District Court found that the warranty deed from Young to

10

Hulbert was to be held in escrow until it was paid for. Since Hulbert was in default, the warranty deed obviously was not "of record." In fact, there is no indication that a notice of purchaser's interest was filed in Hulbert's favor. Accordingly, Young is clearly the "owner of record" as contemplated by the statutory scheme.

The District Court found that Young was not an "innocent owner" as of the date of the January 21, 1993 quit claim deed since he had actual knowledge (at that time) that the residence had been used to facilitate a violation of law. Accordingly, the District Court concluded that Young proceeded at his own risk in purchasing Hulbert's interest in the premises. However, in applying the "innocent owner" test--the court focused on the wrong time period. The statute provides: "An owner's interest in real property is not subject to forfeit by reason of any act or omission unless it is proved that the act or omission was the owner's or was with his actual knowledge or express consent." Section 44-12-102(1)(i), MCA. Obviously, the question to be answered is: "Did Young have actual knowledge of the criminal activity at the time is was occurring, or did he expressly consent to that activity either before or at the time it was occurring?" The court merely held that, when Young received the quitclaim deed, he knew that Hulbert had been arrested and was being charged with operating a marijuana grow operation. That after the fact knowledge, however, is totally irrelevant to the inquiry. The statute is clear, an owner's interest cannot be forfeited unless he had actual knowledge of the

11

activity or consented to such activity. Section 44-12-102(1)(i), MCA. Further, the law clearly requires that if the owner is innocent, the property is to be released to the owner of record as of the date of the seizure. Section 44-12-205(1), MCA. The District Court's finding that "Young had actual knowledge that the residence and property had been used to facilitate the commission of a violation of title 45, chapter 9, when the January 18 transfer occurred . . . " does not disqualify Young as an innocent owner. As such, he is entitled to the property totally aside from the existence or timing of the quitclaim deed.

My second reason for believing that the legislature did not intend to treat a vendor under a contract for deed as having a mere interest in personalty is found in the burden of proof requirements imposed upon an owner of personalty. Section 44-12-204(3), MCA. The Court holds that Young, by virtue of being a vendor under a contract for deed, is a secured party; an "owner of personalty rather than an owner of real property." As a secured party, the Court concludes that Young is entitled to disposition of his interest under § 44-12-205(2), MCA. However, a secured party is entitled to disposition under § 44-12-205(2), MCA, only upon "proper proof of his claim." The proof required of a secured party is set forth in § 44-12-204(3), MCA. In relegating Young to the status of a secured party with a mere interest in personalty, the Court is thereby subjecting all vendor's interests in real estate to forfeiture unless such vendor can prove that his/her security interest (contract for deed) is *bona fide and that it was created*

12

*after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser and without knowledge that the property was being or was to be used for the purpose charged."* Section 44-12-204(3), MCA. This will no doubt come as somewhat of a shock to sellers of real estate who have been neglecting to check out the moral responsibility, character, and reputations of their purchasers.

The majority reasons that the State's right to forfeiture relates back and thereby preempts the January 18, 1993 quitclaim deed to Young. As pointed out above, I am of the opinion that Young is an "owner of record" by virtue of his bare legal title. That interest predates either Hulbert's equitable interest or the State's interest by virtue of the relation back doctrine. His claim of ownership is not dependent upon the quitclaim deed. However, as an alternative rationale, I must point out that, in my opinion, Young's interests as a seller under a contract for deed (which contract was in default) are superior to the forfeiture rights of the State of Montana. The contract for deed was in default due to Hulbert's failure to make his required payments. As the District Court noted, the contract for deed contemplated use of a quitclaim deed in the event of default. Thus, Young was entitled to invoke the default provisions of the contract or to accept a deed in lieu of foreclosure, which, in effect, he did. He did this in January of 1993, before the State had commenced any forfeiture proceedings against the property. The State had not physically seized the property nor had it filed a lis pendens to cloud the

13

**title.** Although the State has a right to seek forfeiture, it is not required to do so. Young was under no obligation to sit back and wait to see if the State was going to exercise that option, He acted as a reasonably prudent seller under a contract for deed which is in default. The State was simply too slow.

I do not suggest that a defendant in a criminal proceeding be allowed to thwart the forfeiture laws by quickly and collusively deeding the subject property to a friend or previously uninterested person. Under such circumstances, the relation back doctrine would probably defeat the claim of the new collusive "owner." Under the present facts, however, Young is no **strawman** owner. Rather, his interest in the property stems from his prior status as the owner of record and as a vendor under a contract for deed which was in default.

With or without the quitclaim deed, Young was an "innocent owner" who was entitled to return of the property. The majority of this Court has elevated the forfeiture rights of the State of Montana above the rights of an innocent owner of record. In forfeiting title to the State, the Court purports to do nothing **more** than put the State in the shoes of Hulbert. In doing so, however, it ignores the fact that Hulbert did not have legal title and that he was in default under the contract for deed. As a result, the Court places the State in shoes much more well-heeled than any Hulbert ever wore. I respectfully dissent.

_W. William Leaphart_
Justice

14

Chief Justice J.A. Turnage and Justice Karla M. Gray join in the foregoing dissent of Justice W. William Leaphart.


_____
Chief Justice

_____
Justice

June 20, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Karl Knuchel
116 West Callender
P.O. Box 953
Livingston, MT 59047

Wm. Nels Swandel
Park County Attorney
414 East Callender St.
Livingston, MT 59047

HON. JOSEPH P. MAZUREK, Attorney General
John Paulson, Assistant
Justice Bldg.
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy