*502 JUSTICE WEBER
delivered the Opinion of the Court.
This is an appeal from a decision of the Sixth Judicial District Court, Park Comity, to allow the seizure and sale of real property involved in a drug felony. We affirm in part and remand.
The only issue for review is whether the District Court erred in permitting the real property to be seized and sold despite the owner’s issuance of a quitclaim deed to the seller following the owner’s arrest and charge for the crime.
Appellant Russell J. Young (Young) and Timothy J. Hulbert (Hulbert) were involved in a business together. That relationship ended in March of 1988. Following dissolution, Hulbert made arrangements to purchase the business property from Young, subject to payment of an outstanding bank loan owed to Young. The sale of the property was by contract for deed from Young to Hulbert.
On January 12, 1993, law enforcement officers from the Park County Sheriff’s Office and Livingston Police Department searched Hulbert’s residence and discovered that he was growing marijuana in his home. Hulbert was thereafter arrested for possession with intent to sell. On January 21, 1993, Hulbert issued a quitclaim deed for his residence to Young who paid Hulbert $5,000.
A petition to institute forfeiture proceedings was filed on February 23, 1993, against Hulbert for both the real property and the drug paraphernalia found in the residence. Young was added as a respondent on March 10, 1993. Hulbert never filed an answer and a default was entered. Young filed an answer and counterclaim which was subsequently withdrawn.
The parties stipulated that the only issue to be considered was whether the quitclaim deed to Young prevented the State’s subsequent seizure of the real property. Following a bench trial after which Hulbert was convicted of possession with intent to sell, the court considered the quitclaim deed and found that although Young had a legitimate interest in the property, his quitclaim deed did not cut off the State’s right to forfeit the real estate. The court reasoned that the relation back doctrine applied and that although the quitclaim deed preceded the State’s petition for forfeiture, the State’s interest in seizing the property was ripe upon the commission of the crime, January 12, 1993, and a transfer of the property subsequent to the crime was void.
In its June 13th Findings of Fact and Conclusions of Law, the court ordered the Park County Sheriff to sell at public auction the seized *503 property described as Tract one (1) of certificate of survey no. 370, located in section 22, T2S, R9E, Park County, Montana. The court stated that Young was due the balance owed him on the said contract for deed, plus whatever interest had accumulated.
Young appeals the forfeiture of the real property deeded to him by the quitclaim deed.
Did the District Court err in permitting the real property to be seized and sold despite the owner’s issuance of a quitclaim deed to the seller following the owner’s arrest and charge for the crime?
Young argues on appeal that he is an innocent owner pursuant to § 44-12-102(1)(i), MCA. The State argues that it has not forfeited Young’s interest in the property; Young’s security interest in the residence was fully recognized by the court in its June 13,1994 Order. The State points out that the interest recognized, however, is not that of owner because Hulbert was the owner on January 12,1993; Young has a security interest in the property.
The District Court correctly based its decision on the “relation back doctrine” set out for the first time in United States v. Stowell (1889), 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed 555. The doctrine, followed for many decades, states that whenever a statute determines that upon commission of a certain act specific property used in or connected with that act shall be forfeited, “the forfeiture takes effect immediately upon the commission of the act.” Stowell, 133 U.S. at 16, 10 S.Ct. at 247, 33 L.Ed at 559.
We adopt the doctrine of relation back as established in Stowell with regard to the facts of the present case. As a result, we conclude that by relation back, the crime was committed on the date of discovery, that being, January 12,1993. As a result, upon that day, the State had the right to seize the real property which had been directly used to facilitate the offense. The controlling provision is the following portion of § 44-12-102, MCA:
Things subject to forfeiture. (1) The following are subject to forfeiture:
(i) real property, including any right, title, and interest in any lot or tract of land and any appurtenances or improvements, that is directly used or intended to be used in any manner or part to commit or facilitate the commission of or that is derived from or maintained by the proceeds resulting from a violation of Title 45, chapter 9, that is punishable by more than 5 years in prison. An *504 owner’s interest in real property is not subject to forfeit by reason of any act or omission unless it is proved that the act or omission was the owner’s or was with his actual knowledge or express consent.
The next question is whether Young’s interest in the property can be classed as an owner’s interest in real property. As previously mentioned, Young executed a contract for deed under which he was the seller and Hulbert was the buyer. The doctrine of equitable conversion establishes that as a result of the contract for deed, Young had only the naked legal title which he held as trustee for the purchaser and as security for the unpaid purchase price. The rule was stated in In the Matter of the Estate of Wooten (1982), 198 Mont. 132, 137-38, 643 P.2d 1196, 1199:
... we find that this is a proper case for application of the doctrine of equitable conversion. We have applied this doctrine many times in the past. A suitable example of its operation can be seen in Kern v. Robertson (1932), 92 Mont. 283, 12 P.2d 565, where we stated:
“The authorities are in accord that an enforceable contract for the purchase and sale of real property passes to the purchaser the equitable and beneficial ownership thereof, leaving only the naked legal title in the seller, as trustee for the purchaser, and as security for the unpaid purchase price.
A more recent case, In Re Estate of Rickner (1974), 164 Mont. 51, 518 P.2d 1160, states:
“It has long been established by this Court that a contract for the sale of real property converts the seller’s interest from an owner of real property to that of an owner of personalty, this being the doctrine of equitable conversion. ...
Based upon the foregoing authority, we conclude that the interest owned by Young at the time of the commission of the crime on January 12, 1993, was as an owner of personalty rather than as an owner of real property. As a result, we conclude that Young’s specific interest in the property was not covered by the above last sentence of § 44-12-102(1)(i), MCA.
This leads us to the statutes which control the procedure for forfeiture. The pertinent parts of § 44-12-205, MCA, are as follows:
44-12-205. Disposition of property following hearing. (1) If the court finds that the property was not used for the purpose charged or that the property listed in 44-12-102(l)(g) was used without the knowledge or consent of the owner, it shall order the *505 property released to the owner of record as of the date of the seizure.
(2) If the court finds that the property was used for the purpose charged and that the property listed in 44-12-102(l)(g) was used with the knowledge or consent of the owner, the property shall be disposed of as follows:
(a) If proper proof of his claim is presented at the hearing by the holder of a security interest, the court shall order the property released to the holder of the security interest if the amount due him is equal to or in excess of the value of the property as of the date of seizure, it being the purpose of this chapter to forfeit only the right, title, or interest of the owner. If the amount due the holder of the security interest is less than the value of the property, the property, if it is sold, must be sold at public auction by the law enforcement agency that seized the property in the same manner provided by law for the sale of property under execution or the law enforcement agency may return the property to the holder of the security interest without proceeding with an auction.
Paragraph (1) of the above code section first states that if the court finds the property was not used for the purpose charged, it shall order the property released to the owner of record. The court here of course found the property was used for the purpose charged so that provision does not apply.
Next paragraph (1) provides that if the court finds that the property listed in § 44-12-102(1)(g), MCA, was used without the knowledge or consent of the owner, it shall order the property released to the owner of record. This is a confusing portion of the statute. First, it is essential to note that § 44-12-102(1)(g), MCA, provides:
(1) The following are subject to forfeiture:
(g) everything of value furnished or intended to be furnished in exchange for a controlled substance in violation of Title 45, chapter 9; all proceeds traceable to such an exchange; and all money, negotiable instruments, and securities used or intended to be used to facilitate a violation of Title 45, chapter 9 ...
Because the property with which we are here involved is not within the definition of § 44-12-102(1)(g), MCA, we must conclude that no part of § 44-12-205(1), MCA, is applicable here.
This then leads us to paragraph (2) of § 44-12-205, MCA. In substance paragraph (2) provides that if the court finds as it did here *506 that the real property was used for the purposes charged, the property shall be disposed of as provided in subparagraphs (a) to (c). In the present case, Young proved that he was the holder of a secured interest by virtue of his position as a seller under a contract for deed. The specific provision of subparagraph (a) is that the property should be released to the holder of such a security interest if the amount due is equal to or in excess of the value of the property as of the date of seizure. The subparagraph further provides that if the amount due the holder of the security interest is less than the value of the property, then the property is to be sold or the property may be returned to the holder of the security interest. The key point here is that the District Court is required to determine the value of the real property as of the date of seizure. In the present case, if that determination had been made, and if it had been determined that the value of the real property was less than the security interest, the court should have ordered the property delivered to Young. On the other hand, if the District Court determined that the value of the real property exceeded the security interest, then the property could have been sold, Young could have been paid out of the proceeds with the balance going to the State. The record before us establishes that the District Court did not establish the value of the real property on the date of seizure, or the specific amount owing to Young under his security interest.
We hold that because of our application of the Stowell doctrine, Hulbert’s issuance of a quit claim deed to Young was ineffective so far as the drug seizure is concerned and that the District Court did not err in permitting the real estate to be seized. We further hold that the record does not yet establish a basis for the sale of the property and we remand to the District Court in order that it may determine the value of the real property as of the date of seizure, and the amount owing to Young under his security interest. At that point, the District Court shall then determine under the statute whether or not it is appropriate to surrender the real property to Young as the holder of the security interest, or to order the sale of the property with the requirement that the proceeds shall be used first to pay off the entire amount owing to Young under his security interest with the balance to go to the State of Montana.
We remand to the District Court.
*507 JUSTICES NELSON, TRIEWEILER and HUNT concur.