JUSTICE LEAPHART,
dissenting.
I dissent. The Court’s analysis is based upon the premise that Young was not the owner of the property in question. Rather, that, as a seller under a contract for deed, he merely had a security interest in the property and that his security interest is personalty only. Using that assumption, the Court avoids the issue of whether Young is an “innocent owner” under the provisions of §§ 44-12-102(l)(i) and 44-12-205, MCA, and then proceeds to conclude that he was legitimately treated as a secured party under § 44-12-205(2)(a), MCA.
Although there is support for such a conclusion, I do not believe that that is the result envisioned by the legislature when it adopted Chapter 12 of Title 44, MCA. I say this for two reasons. First of all, although the statutes on forfeiture make reference to “owner,” they also make reference to “owner of record.” See 44-12-205(1), MCA. “Owner of record” is not defined. I take that term to mean the holder of the legal title. As the Court correctly concludes, under the doctrine of equitable conversion, Young, as the seller under a contract for deed, becomes an owner of personalty with naked legal title to the property. Estate of Wooten (1982), 198 Mont. 132, 643 P.2d 1196. Legal title remains vested in the vendor (Young) until such time as the contractual provisions are fully performed. In my view, however, that bare legal title is sufficient to qualify Young as the “owner of record” as that term is used in Title 44, Chapter 12, MCA.
The District Court found that the warranty deed from Young to Hulbert was to be held in escrow until it was paid for. Since Hulbert was in default, the warranty deed obviously was not “of record.” In fact, there is no indication that a notice of purchaser’s interest was filed in Hulbert’s favor. Accordingly, Young is clearly the “owner of record” as contemplated by the statutory scheme.
The District Court found that Young was not an “innocent owner” as of the date of the January 21, 1993 quit claim deed since he had actual knowledge (at that time) that the residence had been used to facilitate a violation of law. Accordingly, the District Court concluded that Young proceeded at his own risk in purchasing Hulbert’s interest in the premises. However, in applying the “innocent owner” test — the court focused on the wrong time period. The statute provides: “An owner’s interest in real property is not subject to forfeit by reason of any act or omission unless it is proved that the act or omission was the owner’s or was with his actual knowledge or express consent.” *508 Section 44-12-102(l)(i), MCA. Obviously, the question to be answered is: “Did Young have actual knowledge of the criminal activity at the time is was occurring, or did he expressly consent to that activity either before or at the time it was occurring?” The court merely held that, when Young received the quitclaim deed, he knew that Hulbert had been arrested and was being charged with operating a marijuana grow operation. That after the fact knowledge, however, is totally irrelevant to the inquiry. The statute is clear, an owner’s interest cannot be forfeited unless he had actual knowledge of the activity or consented to such activity. Section 44-12-102(l)(i), MCA. Further, the law clearly requires that if the owner is innocent, the property is to be released to the owner of record as of the date of the seizure. Section 44-12-205(1), MCA. The District Court’s finding that ‘Young had actual knowledge that the residence and property had been used to facilitate the commission of a violation of title 45, chapter 9, when the January 18 transfer occurred ...” does not disqualify Young as an innocent owner. As such, he is entitled to the property totally aside from the existence or timing of the quitclaim deed.
My second reason for believing that the legislature did not intend to treat a vendor under a contract for deed as having a mere interest in personalty is found in the burden of proof requirements imposed upon an owner of personalty. Section 44-12-204(3), MCA. The Court holds that Young, by virtue of being a vendor under a contract for deed, is a secured party; an “owner of personalty rather than an owner of real property.” As a secured party, the Court concludes that Young is entitled to disposition of his interest under § 44-12-205(2), MCA. However, a secured party is entitled to disposition under § 44-12-205(2), MCA, only upon “proper proof of his claim.” The proof required of a secured party is set forth in § 44-12-204(3), MCA. In relegating Young to the status of a secured party with a mere interest in personalty, the Court is thereby subjecting all vendor’s interests in real estate to forfeiture unless such vendor can prove that his/her security interest (contract for deed) is “bona fide and that it was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser and without knowledge that the property was being or was to be usedforthe purpose charged.” Section 44-12-204(3), MCA. This will no doubt come as somewhat of a shock to sellers of real estate who have been neglecting to check out the moral responsibility, character, and reputations of their purchasers.
The majority reasons that the State’s right to forfeiture relates back and thereby preempts the January 18, 1993 quitclaim deed to *509 Young. As pointed out above, I am of the opinion that Young is an “owner of record” by virtue of his bare legal title. That interest predates either Hulbert’s equitable interest or the State’s interest by virtue of the relation back doctrine. His claim of ownership is not dependent upon the quitclaim deed. However, as an alternative rationale, I must point out that, in my opinion, Young’s interests as a seller under a contract for deed (which contract was in default) are superior to the forfeiture rights of the State of Montana. The contract for deed was in default due to Hulbert’s failure to make his required payments. As the District Court noted, the contract for deed contemplated use of a quitclaim deed in the event of default. Thus, Young was entitled to invoke the default provisions of the contract or to accept a deed in lieu of foreclosure, which, in effect, he did. He did this in January of 1993, before the State had commenced any forfeiture proceedings against the property. The State had not physically seized the property nor had it filed a lis pendens to cloud the title. Although the State has a right to seek forfeiture, it is not required to do so. Young was under no obligation to sit back and wait to see if the State was going to exercise that option. He acted as a ^reasonably prudent seller under a contract for deed which is in default. The State was simply too slow.
I do not suggest that a defendant in a criminal proceeding be allowed to thwart the forfeiture laws by quickly and collusively deeding the subject property to a friend or previously uninterested person. Under such circumstances, the relation back doctrine would probably defeat the claim of the new collusive “owner.” Under the present facts, however, Young is no strawman owner. Rather, his interest in the property stems from his prior status as the owner of record and as a vendor under a contract for deed which was in default.
With or without the quitclaim deed, Young was an “innocent owner” who was entitled to return of the property. The majority of this Court has elevated the forfeiture rights of the State of Montana above the rights of an innocent owner of record. In forfeiting title to the State, the Court purports to do nothing more than put the State in the shoes of Hulbert. In doing so, however, it ignores the fact that Hulbert did not have legal title and that he was in default under the contract for deed. As a result, the Court places the State in shoes much more well-heeled than any Hulbert ever wore. I respectfully dissent.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY join in the foregoing dissent of JUSTICE LEAPHART.