No. 98-215

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 77

294 Mont. 76

979 P.2d 1275

SALLY A. BARNES,

Plaintiff and Appellant,

v.

CITY OF THOMPSON FALLS,

Defendant and Respondent.

No

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Sanders,

The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Linda M. Deola; Reynolds, Motl & Sherwood, Helena, Montana

For Respondent:

Mark S. Williams; Williams & Ranney, Missoula, Montana

Submitted on Briefs: January 21, 1999

Decided: April 20, 1999

Filed:

_____

No

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Sally A. Barnes (Barnes) filed suit against the City of Thompson Falls (Thompson Falls) in the Twentieth Judicial District Court, Sanders County, alleging negligence and nuisance in relation to a 1996 flood that damaged her home. The District Court denied, over objection, Barnes' request to instruct the jury on nuisance. Barnes appeals. We affirm.**

**¶2. The sole issue on appeal is whether the District Court abused its discretion in refusing**

Barnes' proposed jury instructions on nuisance.

Factual and Procedural Background

**¶3. In 1978, Barnes purchased a duplex in Thompson Falls. The duplex was built in a low spot in Thompson Falls, and the basement door was virtually level with the alley behind the house. As a result, runoff from higher ground tended to drain towards Barnes' property and pool in the alley outside her basement door. Within six months of moving in, Barnes began to experience flooding problems in the basement of her duplex whenever significant rainfall occurred. At that time, Thompson Falls did not have a municipal storm sewer system.**

**¶4. To mitigate future flooding, Barnes constructed a small retaining wall in front of the basement door around 1980. Thompson Falls established a municipal sewer system in the early 1980s and, at that time, installed a storm drain in the alley behind Barnes' home. For a period of time, these measures prevented the flooding of Barnes' basement. However, regraveling of the alley over the years by Thomson Falls resulted in the height of the alley's surface rising, thereby lessening the margin of flood protection afforded by Barnes' retaining wall. Moreover, Barnes' flooding**

problem was noticeably exacerbated when the State of Montana decided to expand Highway 200 through Thompson Falls.

¶5. Due to the increased runoff, Barnes experienced flooding from a 1993 rainstorm more severe than anything she had previously endured. Barnes thus filed a complaint with Thompson Falls. In response, Thompson Falls replaced the existing storm drain line in the alley with a larger diameter line. Thompson Falls also chip-sealed the alley to help prevent sand and gravel from clogging the storm drain line.

¶6. Despite these precautionary measures, on July 30, 1996, a brief but "very heavy rainstorm" in Thompson Falls caused the storm drain line to back-up. As a result, runoff pooled in the alley, flowed over Barnes' retaining wall, and flooded the basement of her duplex with three inches of caustic sludge. Barnes therefore filed suit against Thompson Falls, alleging that the city's sewer and storm drain system was negligently designed and maintained, and that the system also constituted a private nuisance. Thompson Falls argued in response that the flooding that occurred at Barnes' home in July of 1996 was not caused by the city's negligence, and that the city could not be held accountable under Barnes' theory of nuisance because its sewer and storm drain system was statutorily authorized. The District Court agreed with Thompson Falls and, accordingly, denied Barnes' request to instruct the jury on nuisance. Thus, the jury decided the case solely on the question of whether Thompson Falls was negligent, and found the city not liable. Other facts will be set forth as necessary.

Discussion

¶7. Did the District Court abuse its discretion in refusing Barnes' proposed jury instructions on nuisance?

¶8. The standard of review of a district court's refusal to give proffered jury instructions is whether the court abused its discretion. Harwood v. Glacier Elec. Co-op., Inc. (1997), 285 Mont. 481, 487, 949 P.2d 651, 655. A trial court is imbued with broad discretion to determine whether or not it will give a proposed instruction to the jury, and this Court will not overturn a district court on the basis of alleged instructional errors absent an abuse of that discretion. Savik v. Entech, Inc. (1996), 278 Mont. 152, 158, 923 P.2d 1091, 1095.

**¶9. Barnes contends that the District Court abused its discretion when it ruled that she could not prevail on a claim of nuisance absent proof of negligence. Under the facts presented by this case, the District Court determined that Barnes' proposed jury instructions on nuisance were not an accurate statement of Montana law pursuant to § 27-30-101, MCA, which provides in part:**

(1) Anything which is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . is a nuisance.

(2) <u>Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance</u>. [Emphasis added.]

Section 27-30-101(1), (2), MCA.

**¶10. As Thompson Falls points out, the nuisance alleged by Barnes is the city's sewer and storm drain system, which is specifically authorized by statute. *See* § 7-13-4301, MCA (statutory authorization for a city or town to establish sewage and water systems). Accordingly, Thompson Falls argues that since the city's storm drain system is expressly authorized by statute, Barnes can only prevail on her theory of nuisance against Thompson Falls by proving negligence. We agree.**

**¶11. Barnes relies upon Wilhelm v. City of Great Falls (1987), 225 Mont. 251, 732 P.2d 1315, wherein this Court held, in part, that "[u]nder the statutory definition of nuisance at § 27-30-101, MCA, a nuisance can exist without negligence." *Wilhelm*, 225 Mont. at 261-62, 732 P.2d at 1322. Pursuant to this holding, Barnes requested that the District Court instruct the jury as follows:**

[Barnes] is not required to prove under this theory [of nuisance] that [Thompson Falls] acted negligently. Negligence of [Thompson Falls] in this case is immaterial in determining liability and is a separate claim from nuisance. A nuisance can exist without negligence.

**¶12. *Wilhelm* involved a nuisance action arising out a city's alleged negligent operation of a statutorily authorized landfill. Instruction 21 in *Wilhelm* instructed the jury that it could find a nuisance, notwithstanding the fact that the landfill was statutorily authorized, if it found that the landfill was either " 'wholly unauthorized'**

" or " 'negligently done.' " *See Wilhelm*, 225 Mont. at 261, 732 P.2d at 1321. Following trial, the jury returned a verdict that the city's landfill constituted a nuisance, but that the nuisance was not caused by the city's negligence. According to this verdict, the District Court entered judgment for the city. *See Wilhelm*, 225 Mont. at 255, 732 P.2d at 1317. The plaintiffs in *Wilhelm* appealed and this Court affirmed.

¶13. In rejecting the plaintiffs' arguments on appeal, this Court held that Instruction 21 in *Wilhelm* was an accurate statement of Montana law because it allowed the jury "to find a nuisance if the act done was wholly unauthorized <u>or</u> negligently done." *Wilhelm*, 225 Mont. at 261, 732 P.2d at 1322. Thus, since the landfill in question was statutorily authorized, the plaintiffs in *Wilhelm*, in order to prevail, were required to prove that the acts complained of were <u>either</u> wholly outside of the statutory authorization <u>or</u> so negligently performed as to constitute a nuisance.

¶14. Regrettably, as this case illustrates, the *Wilhelm* decision is not as clear as it should have been. The lack of clarity in *Wilhelm* is due in large part to this Court's failure to expressly discuss how the first two subsections of § 27-30-101, MCA, interface with each other under general principles of nuisance law. We determine that although this Court reached the right result in *Wilhelm*, our analysis of the jury instructions in that case without an express discussion of § 27-30-101(2), MCA, is likely to breed more confusion than clarity. Accordingly, we take this opportunity to clarify the law of nuisance in Montana as it relates to statutorily authorized activities or facilities.

¶15. This Court in *Wilhelm*, without expressly referring to § 27-30-101(2), MCA, implicitly recognized the distinction between an absolute nuisance, in which negligence is immaterial, and a qualified nuisance, which is predicated upon negligence. *See Wilhelm*, 225 Mont. at 256, 732 P.2d at 1318, *quoting* 58 Am. Jur. 2d *Nuisances* § 221 (1971) (holding that, " 'where a nuisance has its origin in negligence, as distinguished from an absolute nuisance,' " contributory negligence can constitute a defense). This distinction is crucial to understanding both the proper application of § 27-30-101, MCA, as well as the result reached in *Wilhelm*.[(1)]

¶16. A nuisance action may be based upon conduct of a defendant that is either intentional, negligent, reckless, or ultrahazardous. Thus, "negligence is merely one type of conduct upon which liability for nuisance may be based." 58 Am. Jur. 2d *Nuisances* § 9 (1989) (footnote omitted). This was the case in *Wilhelm*, where the

plaintiffs claimed "that the nuisance ha[d] its origins in [the city's] negligence." *Wilhelm*, 225 Mont. at 256, 732 P.2d at 1318.

¶17. In general, nuisances may be classified as either a nuisance *per se* or at law, or as a nuisance *per accidens* or in fact. A nuisance *per se* or at law is an inherently injurious act, occupation, or structure that is a nuisance at all times and under any circumstances, without regard to location or surroundings, while a nuisance *per accidens* or in fact is one which becomes a nuisance by virtue of circumstances and surroundings. *See* 66 C.J.S. *Nuisances* § 5 (1998).

¶18. In turn, nuisances may be classified as either absolute or qualified. An absolute nuisance is often referred to as the same thing as a nuisance *per se*, and is defined as a nuisance, "the substance . . . of which is not negligence, which obviously exposes another to probable injury." 66 C.J.S. *Nuisances* § 3 (1998) (footnote omitted). A qualified nuisance, on the other hand, is a "nuisance dependent on negligence [that] consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another." 66 C.J.S. *Nuisances* § 3 (1998) (footnote omitted).

¶19. How, then, can a plaintiff bring a nuisance action against a defendant engaged in a statutorily authorized endeavor when § 27-30-101(2), MCA, indicates that such activities or facilities shall not "be deemed a nuisance"? The starting point for our analysis is the historical source of this nuisance immunity defense. Section 27-30-101(2), MCA, was borrowed verbatim from § 3482 of the California Civil Code, which provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482 (West 1997). When interpreting a statute borrowed from a sister state, this Court generally follows the construction placed on the statute by the highest court of the state from which it was adopted. Dew v. Dower (1993), 258 Mont. 114, 125-26, 852 P.2d 549, 556 (citing State v. Murphy (1977), 174 Mont. 307, 311, 570 P.2d 1103, 1105).

¶20. The California Supreme Court, in interpreting the reach of the nuisance immunity defense afforded by § 3482, has consistently applied a narrow construction to the principle embodied therein:

"A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express

terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury."

Hassell v. City and County of San Francisco (Cal. 1938), 78 P.2d 1021, 1022-23, *quoting* 46 C.J. at 674.

**¶21. The *Hassell* test of statutory authorization thus "requires a particularized assessment of each authorizing statute in relation to the act which constitutes the nuisance." Varjabedian v. City of Madera (Cal. 1977), 572 P.2d 43, 47 n.6. By requiring that the authorizing statute contain an express or necessarily implied authorization to do the very act which occasions injury, it is ensured that "an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability." *Varjabedian*, 572 P.2d at 47.**

**¶22. More importantly for the purposes of this case, the courts of California have concluded pursuant to the *Hassell* test that " 'although an activity authorized by statute cannot be a nuisance, the <u>manner</u> in which the activity is performed may constitute a nuisance.' " Greater Westchester v. City of Los Angeles (Cal. 1979), 603 P.2d 1329, 1336, *quoting* Venuto v. Owens-Corning Fiberglass Corp. (Cal. App. 1971), 99 Cal. Rptr. 350, 359. With respect to statutorily authorized activities or facilities, the authorities are in agreement that:**

A lawful action may become a nuisance by reason of its negligent performance. Thus, there are certain situations in which what was lawful may be turned into a nuisance by negligence in maintenance, and in which the danger, being a continuing one, is often characterized as a nuisance, although dependent upon negligence, as in the case of a highway out of repair. Also, negligent use may make a structure a nuisance which would not be a nuisance otherwise.

58 Am. Jur. 2d *Nuisances* § 72 (1989) (footnotes omitted); *see also* 66 C.J.S. *Nuisances* § 15 (1998); 8 Thompson on Real Property, Thomas Edition § 67.05(b)(4), at 116 (David A. Thomas ed., 1994); *see, e.g.,* Greer v. City of Lennox (S.D. 1961), 107 N.W.2d 337

(holding that a public dump cannot be a nuisance *per se* in view of the statutory authority to operate such facilities, but may become a private nuisance by virtue of a municipality failing to perform its statutory functions in a reasonable manner); Brown v. County Commissioners of Scioto County (Ohio App. 1993), 622 N.E.2d 1153 (holding that operation of a duly authorized sewage treatment plant could not be an absolute nuisance, but could be found to constitute a qualified nuisance predicated upon negligence).

**¶23. In other words, a statutorily authorized activity or facility cannot constitute an absolute nuisance as a matter of law, but, nonetheless, may become a qualified nuisance in fact "by reason of the improper or negligent manner in which it is conducted." 66 C.J.S. *Nuisances* § 15 (1998) (footnote omitted). We find this approach persuasive. When performing acts pursuant to statutory authority, an individual or entity must still act with due care, skill, and in conformity with legislative sanction. *See* 57 Am. Jur. 2d *Municipal, County, School, and State Tort Liability* § 164 (1988).**

**¶24. Thus, for the purpose of clarifying *Wilhelm*, "[a]bsent a predicate finding of negligence, there can be no finding of a qualified nuisance." 66 C.J.S. *Nuisances* § 3 (1998) (footnote omitted); *see also* 58 Am. Jur. 2d *Nuisances* § 25 (1989) ("negligence must be averred and proven to warrant a recovery") (footnote omitted). In refusing Barnes' proposed jury instructions on nuisance, the District Court correctly concluded that this "Court, in upholding the verdict in [*Wilhelm*], required there still to be a finding by the jury of negligence." That is, since the jury in *Wilhelm* did not make a predicate finding of negligence, liability for nuisance did not attach to the defendant city's statutorily authorized acts. *See Wilhelm*, 225 Mont. at 255, 732 P.2d at 1317.**

**¶25. Under § 27-30-101(2), MCA, therefore, an activity or facility that is expressly authorized by the Montana Legislature cannot "be deemed a nuisance" as a matter of law pursuant to the statutory definition of nuisance found at § 27-30-101(1), MCA, unless the plaintiff can show, pursuant to a particularized assessment of the authorizing statute, that the defendant was acting wholly outside of its statutory authority. Furthermore, even assuming that a defendant's activity or facility falls within the exculpatory effect of § 27-30-101(2), MCA, a plaintiff may still claim a qualified nuisance against a defendant, like Thompson Falls, that is operating under express statutory authority, by averring negligent design, construction, operation, or maintenance. However, in bringing a qualified nuisance action, a plaintiff must do**

more than simply plead the existence of the statutorily authorized activity or facility claimed to constitute a nuisance; such plaintiff must, in addition, plead and prove the defendant's negligence and the resulting "injurious" consequences of that activity or facility to plaintiff's "comfortable enjoyment of life or property." *See* § 27-30-101(1), MCA; *see also Varjabedian*, 572 P.2d at 47-48; 66 C.J.S. *Nuisances* § 5 (1998).

¶26. To recap, a statutorily authorized activity or facility cannot be a nuisance unless the plaintiff can show: (1) that the defendant completely exceeded its statutory authority, resulting in a nuisance; or (2) that the defendant was negligent in carrying out its statutory authority, resulting in a qualified nuisance. Thus, the plaintiffs in *Wilhelm* could have prevailed on their nuisance claim if the jury found either that the city was liable for a nuisance because it had acted entirely outside the scope of its legislatively authorized power in operating the landfill, or that the city was liable for a qualified nuisance because it had been negligent in its operation or maintenance of the landfill. Barnes could have likewise prevailed on her nuisance claim against Thompson Falls only by proving that the city was liable for a qualified nuisance, notwithstanding § 27-30-101(2), MCA, because it had been negligent in designing, constructing, operating, or maintaining the storm drain line, or by proving that the city had acted wholly outside of its statutory authority with respect to the storm drain line and was thus liable, in the absence of negligence, for a nuisance pursuant to the definition of § 27-30-101(1), MCA.

¶27. While it is generally true, as Barnes argues, that "a nuisance can exist without negligence," this rule is inapplicable to a situation like the one *sub judice*. Barnes does not dispute that Thompson Falls' sewer and storm drain system is statutorily authorized. Nor does Barnes specifically allege that Thompson Falls exceeded its statutory authority. Barnes attempts to evade the strictures of § 27-30-101(2), MCA, by arguing for the first time on appeal that the flooding, and not the storm drain, constitutes the nuisance and, accordingly, that Thompson Falls has no statutory authority to flood her property. This argument begs the question; it asks this Court to focus not on the activity or facility in question, but on its consequences. However, as a threshold matter under § 27-30-101(2), MCA, a court must first inquire pursuant to the particularized *Hassell* inquiry whether the activity or facility is authorized either by the express terms of the authorizing statute or by necessary implication therefrom. Once it is determined that the activity or facility falls within the immunizing effect of § 27-30-101(2), MCA, a plaintiff's only recourse is to then proceed on a qualified nuisance theory and prove negligence to warrant recovery.

¶28. Here, Barnes has not shown that the actions of Thompson Falls with respect to the storm drain line behind her house were wholly outside of its statutory authority. Since Thompson Falls' storm drain system was constructed and is maintained under the express authority of § 7-13-4301(1)(a), MCA, Barnes could only prevail on her nuisance claim by proving that Thompson Falls was negligent in its design, construction, operation, or maintenance of the storm drain line.

¶29. Despite Thompson Falls' express statutory authority to operate its sewer and drain system, Barnes argues on appeal--as she argued at trial--that she is not required under Montana law to prove negligence in order to recover for nuisance. Barnes fixates on the holding in *Wilhelm* that "a nuisance can exist without negligence," a conclusion impliedly made in reference to the definition of nuisance found at § 27-30-101(1), MCA, while ignoring the plain language of the nuisance immunity defense afforded by § 27-30-101(2), MCA. However, as we have stated herein, § 27-30-101, MCA, must be read in its entirety.

¶30. Under Barnes' theory, a plaintiff could circumvent § 27-30-101(2), MCA, by glossing over the fact that an activity or facility is statutorily authorized (e.g., the sewer and storm drain system) and focusing on the result (e.g., the flooding), arguing that any activity that results in injury to the plaintiff, whether statutorily authorized or not, is a nuisance. Barnes' position on appeal would have this Court, in effect, permit a nuisance action to be *prima facie* actionable against a defendant operating under express statutory authority regardless of any proof that the defendant was negligent in acting upon that statutory authority and, in so doing, to disregard the meaning of the nuisance immunity defense afforded by § 27-30-101(2), MCA. If we were to hold, as Barnes requests, that a statutorily authorized activity or facility can constitute a nuisance solely because it results in damage to the plaintiff, regardless of any negligence on the part of the defendant, this Court would effectively eviscerate the rule of § 27-30-101(2), MCA.

¶31. According to the facts of this case, Barnes could have only brought a qualified nuisance action against Thompson Falls. Under a qualified nuisance theory, "[w]here the acts or omissions constituting negligence are the identical acts which allegedly gave rise to a cause of action for nuisance, the rules applicable to negligence will be applied." 58 Am. Jur. 2d *Nuisances* § 72 (1989) (footnote omitted). Thus, given the jury's verdict of no negligence, we must conclude that Thompson Falls was not negligent in its operation or maintenance of the storm drain line behind Barnes'

**duplex and, thus, would not have been liable for a qualified nuisance due to the incidental flooding of Barnes property in 1996.**

**¶32. We hold that the District Court did not abuse its discretion in refusing Barnes' proposed jury instructions on nuisance, as they constituted a misstatement of Montana law.**

**¶33. Affirmed.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

1. [1] Some of the confusion of *Wilhelm* may be attributed to the fact that the law of nuisance is, itself, a muddle. The venerable Prosser long ago characterized the subject of nuisance as "a sort of legal garbage can," due in large part to a traditional definition of nuisance "broad enough to cover all conceivable torts." William L. Prosser, *Nuisance Without Fault*, 20 Tex. L. Rev. 399, 410 (1942). Later in his life, Prosser thus opined that "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' " William L. Prosser, Handbook of the Law of Torts 571 (4th ed. 1971).