DA 09-0147

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 63

TALLY BISSELL NEIGHBORS, INC., a Montana
Nonprofit Corporation, ROBIN ALLEN, NANCY
ALLEN, BOB BROWN, SUE BROWN, JON CAPON,
BETSY CAPON, MARIAN CARTEE, TOM COURTNEY,
SUSAN COURTNEY, ED CHIANELLI, CHRIS EVANS,
ROBERT FRAHM, MARGO FRAHM, ELDON FRAHM,
JACQUELINE FRAHM, DON HANKS, WENDY HANKS,
BONNIE HODGES, WILL HUNT, LESLIE HUNT, LORRI
HUSTWAITE, DARRYL HUSTWAITE, JOHN KLASSEN,
SUSAN KLASSEN, STEVE KNIGHT, KALEEN KNIGHT,
MICHELE LARSEN, GREG LEE, RICHARD MARRIOTT,
LINDA MARRIOTT, BRIDGET O'LEARY, JEFF POWERS,
BARBARA POWERS, ROB RICE, WENDI RICE, STEVE
SMITH, SHARI SMITH, TIM WILLIAMS, AMY WILLIAMS,
and AMY WINSLOW,

   Plaintiffs and Appellants,

  v.

EYRIE SHOTGUN RANCH, LLC, a Montana Limited
Liability Company, ROBERT HAYES and JOHN DOES,
1 through 3,

   Defendants and Appellees.

APPEAL FROM: District Court of the Eleventh Judicial District,
      In and For the County of Flathead, Cause No. DV 08-184(A)
      Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

     Eric F. Kaplan and Stephanie M. Breck, Kaplan & Breck, Columbia Falls,
     Montana

   For Appellees:

     Sean S. Frampton, Morrison & Frampton, Whitefish, Montana

Submitted on Briefs:  November 12, 2009

Decided:  March 29, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Tally Bissell Neighbors, Inc. (Neighbors), appeal the order of the District Court of the Eleventh Judicial District, Flathead County, granting the motion to dismiss to Eyrie Shotgun Ranch, LLC (Ranch). We affirm in part and reverse in part.

¶2     We review the following issues on appeal:

¶3     *Did the District Court properly dismiss Neighbors' public nuisance claim?*

¶4     *Did the District Court properly dismiss Neighbors' private nuisance claims?*

¶5     *Did the District Court properly dismiss Neighbors' trespass claim?*

¶6     *Did the District Court properly dismiss Neighbors' attractive nuisance claim?*

¶7     *Did the District Court properly dismiss Neighbors' constitutional and statutory claims?*

¶8     *Did the District Court properly dismiss Robert Hayes as a defendant?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶9     Robert Hayes (Hayes) purchased approximately 60 acres of property in 2006 located in the Tally/Bissell Zoning District near homes and properties owned by Neighbors. The Tally/Bissell Zoning District lies southwest of Whitefish, Montana, in Flathead County. Hayes transferred the property to the Ranch, of which he is a member. Hayes and the Ranch constructed a private shooting range on the 60 acres.

¶10     Neighbors filed a multi-count action in which they alleged that the Ranch's operation of a shooting range in close proximity to a subdivision and an elementary school constituted both a public nuisance and a private nuisance. Neighbors further claimed that the shooting

3

range presented an attractive nuisance, that it constituted trespass, and that its operation violated various provisions of the Montana Constitution. Finally, Neighbors alleged pursuant to § 76-9-105, MCA, that the court had authority to close the Ranch because it presented a "clear and provable safety hazard."

¶11 The Ranch filed a motion to dismiss for failure to state a claim upon which relief could be granted. The District Court dismissed Neighbors' public nuisance claim on the basis that § 76-9-101, MCA, specifically authorizes shooting ranges, and, thus, shooting ranges may not be considered a nuisance pursuant to § 27-30-101(2), MCA. The court determined that § 27-30-102, MCA, barred the private nuisance claim because the alleged condition—noise—could not constitute both a private and public nuisance.

¶12 Neighbors had requested an injunction under the attractive nuisance claim to prevent the "likelihood of injury" to nearby schoolchildren. The District Court dismissed the claim on the basis that attractive nuisance represents a tort theory that requires a showing of damage. Mere anticipation of injury, according to the court, proved insufficient to enjoin the shooting range. The court dismissed the trespass action on the grounds that noise cannot constitute a trespass. The court reasoned that only a person or tangible thing that enters the property of another can constitute a trespass.

¶13 The court summarily dismissed Neighbors' constitutional claims. The court dismissed Neighbors' claim under § 76-9-105, MCA, due to the vagueness in the statute in that it provides no procedures for closure or relocation of a shooting range. The court further ruled that the statute provides for no private cause of action.

4

¶14 The court also dismissed Hayes as a defendant. The court determined that § 27-30-105, MCA, applied only to successive landowners. Hayes had owned the land before selling it to the Ranch and the court reasoned that no nuisance existed until the Ranch had constructed the shooting range. Neighbors appeal.

## STANDARD OF REVIEW

¶15 We review *de novo* a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). *Meagher v. Butte-Silver Bow City-County*, 2007 MT 129, ¶ 13, 337 Mont. 339, 160 P.3d 552. A motion to dismiss under Rule 12(b)(6) admits the allegations in the well-pled complaint. The court must consider the complaint in the light most favorable to the plaintiff in evaluating the motion. The court also must take as true all the allegations of fact contained in the complaint. *Meagher*, ¶ 13.

## DISCUSSION

¶16 *Did the District Court properly dismiss Neighbors' public nuisance claim?*

¶17 Neighbors rely on *Martin v. Vincent*, 181 Mont. 247, 593 P.2d 45 (1979), and *Wheeler v. Moe*, 163 Mont. 154, 515 P.2d 679 (1973), in arguing that the District Court improperly dismissed their public nuisance claim by looking beyond the face of the complaint. The Court in *Martin* determined that a court may not rely on "matters outside the allegations of the complaint" in granting a motion to dismiss. *Martin*, 181 Mont. at 251, 593 P.2d at 48. The district court in *Martin* had relied upon factual matters outside the complaint. For example, the district court determined that the brokers had failed to disclose their dual capacity as both broker and buyer based upon the brokers' signatures on both the

5

listing agreement and the sales contract. *Martin*, 181 Mont. at 248, 593 P.2d at 46. This Court determined that nothing on the face of the complaint allowed the district court to conclude that the brokers had failed to disclose their dual capacity. *Martin*, 181 Mont. at 250, 593 P.2d at 47.

¶18 Nothing in *Martin*, however, barred the district court from considering the applicable law when reviewing a motion to dismiss. Nothing in the District Court's order indicates that it looked at factual matters outside the allegations contained in the complaint. The court expressly stated in its order, "even taking all of the allegations as true and the claim as well pled," §§ 27-30-101(2) and 76-9-101, MCA, barred Neighbors' relief.

¶19 The plaintiffs in *Wheeler* filed an action against the Missoula County Sheriff, the Missoula County Attorney, and other public officials. *Wheeler*, 163 Mont. at 155, 515 P.2d at 680. This Court in *Wheeler* upheld a district court's dismissal of the plaintiff's complaint based upon the public officials' immunity from civil prosecution in the performance of their official duties. *Wheeler*, 163 Mont. at 163, 515 P.2d at 684. The Court noted that the plaintiff's complaint contained no allegations that the public officers had been acting in any capacity other than as public officials. *Wheeler*, 163 Mont. at 163, 515 P.2d at 684. This Court dismissed the complaint as insufficient to support a claim. *Wheeler*, 163 Mont. at 161, 515 P.2d at 683.

¶20 Neighbors go astray with their argument that nothing in their complaint expressly refers to § 76-9-101, MCA. The plaintiff's complaint in *Wheeler* did not expressly refer to the fact that public officials enjoyed immunity from civil prosecution in the performance of

6

their official acts. The complaint in Wheeler referred solely to the fact that the defendants had been performing official acts. *Wheeler*, 163 Mont. at 160, 515 P.2d at 682. Here, as in *Wheeler*, the District Court must apply the controlling law to the factual allegations raised in the complaint.

¶21 Neighbors allege that the Ranch's shooting range constitutes a public nuisance. Sections 27-30-101(2) and 76-9-101, MCA, apply regardless of whether Neighbors refer to them explicitly in their complaint. To presume that a district court can grant a motion to dismiss only if the plaintiff expressly raised all potential affirmative defenses or controlling statutes would undermine the district court's responsibility in reviewing a motion to dismiss. The district court considered no facts beyond the face of Neighbors' complaint. The court merely applied law directly applicable to Neighbors' complaint.

¶22 We now must review whether the District Court properly applied §§ 27-30-101(2) and 76-9-101, MCA. Section 27-30-101(2), MCA, provides that "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Section 76-9-101, MCA, provides protection for "the locations of and investment in shooting ranges for shotgun, archery, rifle, and pistol shooting." Neighbors argue that § 76-9-101, MCA, represents a general policy statement that does not expressly authorize all shooting ranges.

¶23 This Court addressed the effect of § 27-30-101(2), MCA, in *Barnes v. City of Thompson Falls*, 1999 MT 77, 294 Mont. 76, 979 P.2d 1275. We determined in *Barnes* that a court must inquire whether the activity is authorized "either by the express terms of the authorizing statute or by necessary implication therefrom" as a threshold matter under § 27-

7

30-101(2), MCA. *Barnes*, ¶ 27. The test of statutory authorization thus requires a "particularized assessment of each authorizing statute in relation to the act which constitutes the nuisance." *Barnes*, ¶ 21. Only in this manner can a court ensure an "unequivocal" legislative intent to sanction a nuisance while avoiding the uncertainty that would result were every generally worded statute allowed to immunize nuisance liability. *Barnes*, ¶ 21.

¶24 Nothing in § 76-9-101, MCA, expressly immunizes shooting ranges from civil nuisance liability. A review of the legislative history of § 76-9-101, MCA, proves instructive in interpreting the generally worded policy statement contained in the statute. The Montana Legislature adopted House Bill 487, "An Act Protecting Shooting Range Locations," with the purpose to protect pre-existing shooting ranges from community encroachment and from neighbors complaining of noise or safety hazards from the ranges. Mont. H. Local Gov. Comm., *An Act Protecting Shooting Range Locations: Hearing on HB 487*, 52nd Leg., Reg. Sess. 8-9 (Feb. 19, 1991), Mont. Sen. Fish & Game Comm. *An Act Protecting Shooting Range Locations: Hearing on HB 487*, 52nd Leg., Reg. Sess. 6-7 (Mar.14, 1991).

¶25 House Bill 487 added an entirely new Chapter to Title 76 to protect shooting ranges. House Bill 487 also included four amendments to other code provisions. The Legislature expressly exempted shooting ranges from §§ 7-5-2109, 7-5-2110, 45-8-101, and 45-8-111, MCA. These exemptions protect shooting ranges from the definition of community decay, litter, disorderly conduct, and the criminal provision for public nuisances. Mont. HB 487, 52nd Leg., Reg. Sess. (Mar. 14, 1991). The Legislature combed through the Montana Code

8

to exempt shooting ranges from four specific areas, including criminal public nuisance under Title 45 of the criminal code.

¶26    The Legislature chose not to exempt shooting ranges from the specific civil provisions regarding civil public nuisance in Title 27, Chapter 30. The Dissent posits that we should infer statutory authorization of new shooting ranges by "necessary implication" because §§ 76-9-101, 103, and 104, MCA, authorize the act in question—operation of the shooting ranges. Dissent, ¶¶ 59, 60. The Dissent argues further that the statutory authorization test from *Barnes* asks only whether the questioned activity falls "wholly outside its statutory authority." Dissent, ¶ 63.

¶27    The test enunciated in *Barnes* ultimately considers whether the defendant's activity falls outside its statutory authority. *Barnes*, ¶ 25. Before considering whether the defendant's activity falls outside its statutory authority, however, a court must undertake a "particularized assessment" of the authorizing statute to determine whether the questioned activity even warrants protection in the first place. *Barnes*, ¶ 25. By requiring such a "particularized assessment," the reviewing court ensures an "unequivocal legislative intent" expressly to or necessarily to imply authorization. *Barnes*, ¶ 21. The parties in *Barnes* did not dispute that the statute authorized the alleged nuisance—the city's sewage and storm drain system. *Barnes*, ¶ 27. The Neighbors sharply dispute, however, whether § 76-9-101, MCA, authorizes shooting ranges. Thus, this Court must undertake a particularized assessment of the statute to determine the Legislature's intent.

9

¶28 The statute certainly evinces the requisite unequivocal legislative intent to protect shooting ranges from adverse local planning and zoning efforts under §§ 76-9-103, 104, MCA. We cannot discern a similar unequivocal intent, however, to exempt shooting ranges from civil nuisance liability. *Barnes*, ¶ 21. In fact, we must assume the opposite. The Legislature protected shooting ranges explicitly from planning, zoning, community decay, litter, disorderly conduct, and criminal nuisance, but made no mention of civil nuisance liability.

¶29 This Court may not insert what has been omitted, or omit what has been inserted. Section 1-2-101, MCA. We cannot insert an inference in § 76-9-101, MCA, by the Legislature to shield shooting ranges from civil nuisance liability. The Legislature carefully crafted House Bill 487 and elected to exempt shooting ranges from specific provisions of the Montana Code. We decline to interpret these specific provisions of the statute to encompass an omitted provision. We reverse and remand to the District Court to allow Neighbors to further develop their civil public nuisance claim.

¶30 *Did the District Court properly dismiss Neighbors' private nuisance claims?*

¶31 Montana law defines a public nuisance as one that affects an "entire community or neighborhood or any considerable number of persons." Section 27-30-102, MCA. A private nuisance, by contrast, includes every nuisance not included in the definition of public nuisance. Section 27-30-102, MCA. The District Court reasoned that the noise from the shooting range could not constitute both a public and private nuisance "by application of the legal definition of Section 27-30-102, MCA."

10

¶32     Montana adopted § 27-30-102, MCA, verbatim from California Civil Code § 3480. This Court follows the construction placed on the statute by the highest court of the state that first enacted the statute. *Barnes*, ¶ 19. The California Court of Appeals has recognized that a nuisance may qualify as both a public and private nuisance. *Koll-Irvine Ctr. Prop. Owners Assn. v. Co. of Orange*, 24 Cal. App. 4th 1036, 1041 (1994). The *Koll-Irvine* court determined that the plaintiff must show an injury specific to the use and enjoyment of his or her land in order to proceed on a private nuisance theory. The injury "need not be different in kind," however, from that suffered by the general public. *Koll-Irvine*, 24 Cal. App. 4th at 1041.

¶33     The District Court determined that the noise from the Ranch's shooting range represents a condition common to all the plaintiffs. As noted in *Koll-Irvine*, however, a district court should focus on the *injury*—whether the alleged nuisance interferes with a specific plaintiff's use and enjoyment of his land. *Koll-Irvine*, 24 Cal. App. 4th at 1041. The court should not focus on whether the *condition* constituting the alleged nuisance is unique to a particular plaintiff. *Koll-Irvine*, 24 Cal. App. 4th at 1041.

¶34     Some degree of increased noise from the Ranch's shooting range may present a condition common to Neighbors' public and private nuisance claims. The injuries alleged in Neighbors' private nuisance claims, however, are unique to each member of the group. For example, Neighbors' private nuisance claims allege interference with the Triple D Game Farm, which supplies animals for still and cinema photography, and obstruction of Rob Rice's home recording studio. These injuries, including potential pecuniary losses

11

associated with them, are unique and specific to particular residents in the Tally/Bissell Zoning District. The District Court improperly focused on the condition common to all plaintiffs in the form of increased noise from the shooting range. The court should have focused on the injuries alleged by specific plaintiffs.

¶35 *Did the District Court properly dismiss Neighbors' trespass claim?*

¶36 The District Court reasoned that the definition of trespass requires a person or *thing* to enter the property of another. The court determined that sound did not constitute a tangible thing. Neighbors contend that the modern view supports an action for trespass based upon intangible intrusions.

¶37 Neighbors point to cases from a variety of jurisdictions that recognize intangible invasions such as noise, light, airborne gases, and electromagnetic fields to support actions for trespass. *See Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1200 (D. Col. 2003) (plutonium plume contaminants), *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1551 (D. Idaho 1992) (noise from plant's electrical generator), *Elton v. Anheuser-Busch Beverage Group, Inc.*, 50 Cal. App. 4th 1301, 1307 (1996) (fire and smoke). All these jurisdictions have required a showing of actual physical damage, however, in bringing a trespass action based upon noise or some other intangible invasion.

¶38 The recognition of a trespass claim based upon an intangible invasion, yet requiring a showing of actual damage, maintains the distinction between trespass and nuisance. The law predicates the tort of trespass upon a party's right to exclusive possession of his property. *Cook*, 273 F. Supp. 2d at 1199; see also the Restatement (Second) of Torts, § 163, cmt. d

12

(1965). A nuisance action, by contrast, serves to protect a party's right to free use and enjoyment of his property. Section 27-30-101, MCA. The entry of another person or thing obstructs a property owner's exclusive possession. A party need not establish actual harm or damages in a traditional trespass action. *Cook*, 273 F. Supp. 2d at 1199-1200.

¶39 With respect to an intangible trespass, however, the majority of courts have reasoned that the party's right to exclusive possession has not been infringed. *Cook*, 273 F. Supp. 2d at 1200. As a result, courts generally require a showing of actual damage to support a cause of action for trespass based upon an intangible item. *Cook*, 273 F. Supp. 2d at 1200. We agree with the analysis employed by these courts and recognize an intangible invasion, accompanied by actual damages, to support a cause of action for trespass. The District Court failed to recognize that Neighbors may be able to establish actual damages in support of their intangible trespass claim. The District Court denied Neighbors the opportunity to develop facts and evidence sufficient to establish actual damage when it prematurely dismissed their trespass claim.

¶40 *Did the District Court properly dismiss Neighbors' attractive nuisance claim?*

¶41 Neighbors argue that the anticipation of injury proves sufficient to sustain an attractive nuisance claim. Neighbors cite Montana cases where this Court has contemplated injunctions brought under nuisance theory grounded in tort. *See Purcell v. Davis*, 100 Mont. 480, 488, 50 P.2d 255, 256 (1935); *Boyer v. Karagacin*, 178 Mont. 26, 32, 582 P.2d 1173, 1177 (1978); *Dutton v. Rocky Mtn. Phosphates*, 151 Mont. 54, 74, 438 P.2d 674, 685 (1968).

13

¶42    Under the Ranch's argument, attractive nuisance represents a tort theory that requires a showing of causation and damages. The Ranch contends that Neighbors failed to allege causation and damages in their complaint. The Ranch seeks to distinguish nuisance from attractive nuisance on the basis that Montana law has codified nuisance in a statute that expressly provides for injunctive relief as a remedy. Sections 27-30-202, 301, MCA.

¶43    Injunctive relief represents a principle of equity. *Wells v. Young*, 2002 MT 102, ¶ 12, 309 Mont. 419, 47 P.3d 809 (2002) (overruled in part on other grounds). This Court has long recognized that flexible, not cast-iron, rules govern courts of equity. *State ex rel. Farm Credit Bank of Spokane v. Dist. Ct. of Third Jud. Dist. Co. of Powell*, 267 Mont. 1, 24, 881 P.2d 594, 607 (1994). These rules call upon the courts of equity to adapt themselves to the exigencies of the particular case. *State ex rel. Farm Credit Bank of Spokane,* 267 Mont. at 24, 881 P.2d at 607.

¶44    Even though the Legislature now has codified nuisance law in Montana, nuisance theory sounds in general tort principles just like attractive nuisance. As a result, a court sitting in equity may grant injunctive relief for anticipated or potential danger under a tort claim such as attractive nuisance, as long as the plaintiff meets the requirements of an attractive nuisance claim. These requirements include: 1) an artificial condition maintained by the possessor of land in a place which the possessor knows or should know that children are likely to trespass; 2) the condition involves an unreasonable risk of death or serious bodily harm; 3) children because of their youth will be unable to discover the condition or realize the danger; 4) the utility of maintaining the condition is slight compared to the risk it

14

presents to young children; and 5) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children. *Big Man v. State of Montana*, 192 Mont. 29, 38, 626 P.2d 235, 240 (1981).

¶45   This approach comports with the statutory standard for granting injunctions. A preliminary injunction under § 27-19-201, MCA, requires a showing "that the commission or continuance of some act during the litigation *would* produce a great or irreparable injury to the applicant." Section 27-19-201(2), MCA (emphasis added). A court may grant a permanent injunction where "pecuniary compensation would not afford adequate relief." Section 27-19-102(1), MCA. The flexible nature of equitable principles allows Neighbors to attempt to establish a prima facie case for a preliminary injunction by showing "that it is at least doubtful whether or not [they] will suffer irreparable injury." *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 14, 334 Mont. 86, 146 P.3d 714.

¶46   The Neighbors properly alleged in their complaint all the elements of attractive nuisance from *Big Man*. The court denied Neighbors the opportunity, however, to develop facts of an actual threat of irreparable injury. The District Court acted too hastily in dismissing the Neighbors' attractive nuisance claim.

¶47   *Did the District Court properly dismiss Neighbors' constitutional and statutory claims?*

¶48   This Court refused in *Shammel v. Canyon Resources Corp.,* 2007 MT 206, 338 Mont. 541, 167 P.3d 886, to determine whether Article II, Section 3, and Article IX, Section 1, right to a clean and healthful environment, support a cause of action for money damages

15

between two private parties "where adequate alternative remedies exist under common law or statute." *Shammel*, ¶ 8. Neighbors also have failed to demonstrate how common law or statutory remedies would not adequately address any potential damages. *Sunburst School Distr. No. 2 v. Texaco, Inc.,* 2007 MT 183, ¶ 64, 338 Mont. 259, 165 P.3d 1079. We agree with the District Court's decision to dismiss Neighbors' claim for monetary damages based upon Article II, Section 3, and Article IX, Section 1.

¶49 Neighbors next claim that operation of the shooting range near an elementary school would violate Article X, Section 1(1) and (3) of the Montana Constitution. These provisions guarantee all Montanans "equality of educational opportunity," and that "the Legislature shall provide a basic system of free quality public elementary and secondary schools." Mont. Const. Art. X, Sec. 1. Article X, Section 1 of the Montana Constitution requires the Legislature to fund a quality educational system. *Columbia Falls Elementary School Dist. No. 6 v. State,* 2005 MT 69, ¶ 31, 326 Mont. 304, 109 P.3d 257. Nothing in these provisions directly address the conduct of private parties. The District Court correctly dismissed Neighbors' claim based upon Article X, Section 1.

¶50 A similar analysis applies to Neighbors' statutory claim. Section 76-9-105, MCA, provides that established shooting ranges "may not be prevented from operation by a state agency, unit of local government, or court unless the range presents a clear and provable safety hazard to the adjacent population." We already have determined that Neighbors may proceed with the common law nuisance and trespass claims contained in their complaint. A decision by a court to enjoin or abate a nuisance or trespass would encompass any "clear and

16

provable safety hazard to the adjacent population" posed by the shooting range. As a result, we need not determine whether § 76-9-105, MCA, provides for a private right of action.

¶51    *Did the District Court properly dismiss Robert Hayes as a defendant?*

¶52    Neighbors' complaint alleges that Hayes initiated construction of the shooting range before selling the property to the Ranch. The complaint alleges that the noise from the operation of the shooting range forms the basis of the various claims. The complaint further alleges that this noise began simultaneously with construction of the shooting range. Thus, the complaint alleges that the nuisance—noise from shotgun blasts—began at the same time as initial construction of the shooting range. Hayes still owned the property at the start of the construction process. Neighbors allege that Hayes created the nuisance before he transferred the property to the Ranch.

¶53    Taking the allegations of the well-pled complaint as true, Neighbors properly included Hayes as a defendant. Neighbors cannot now enjoin Hayes from operating a shooting range that he no longer owns. Neighbors can seek, however, to prove that they suffered damages as a result of Hayes' actions in creating the alleged disturbance from the shotgun blasts while he owned the property. *Meagher*, ¶ 13; §§ 27-30-103, 104, MCA.

¶54    Section 27-30-105, MCA, provides that every "successive owner of property" who neglects to abate a continuing nuisance upon or in the use of such property, created by a former owner, is liable in the same manner as the one who created the nuisance. The Ranch stands as a successive landowner under § 27-30-105, MCA. Neighbors properly seek to

enjoin the Ranch and recover damages from the Ranch based on the Ranch's continued operation of the shooting range.

## CONCLUSION

¶55 The District Court correctly dismissed Neighbors' constitutionally based claims and their attempts to assert a private right of action pursuant to § 76-9-105, MCA. The District Court improperly dismissed Neighbors' public, private, and attractive nuisance claims and trespass claim at the pleadings stage. The District Court also improperly dismissed Robert Hayes as a defendant. We reverse and remand to the District Court to allow Neighbors the opportunity to develop further these claims.


/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART



Justice Jim Rice, concurring and dissenting.

¶56 I would affirm the District Court's dismissal of the nuisance claims. I concur with the Court's resolution of all other issues.

18

¶57 The Court correctly follows *Barnes'* instruction to make a "threshold" determination of whether the act alleged to be a nuisance is authorized "either by the express terms of the authorizing statute or by necessary implication therefrom." Opinion, ¶ 23. However, I disagree with the threshold determination the Court has made.

¶58 The Court offers from the legislative history of § 76-9-101, MCA, that the statute was adopted "with the purpose to protect pre-existing shooting ranges from community encroachment" and notes that "[t]he Legislature chose not to exempt shooting ranges from the specific civil provisions regarding civil public nuisance." Opinion, ¶¶ 24, 26. From this, the Court concludes that there is no "unequivocal intent . . . to exempt shooting ranges from civil nuisance liability." Opinion, ¶ 28.

¶59 First, I disagree with the Court's assumption that the statute was meant to protect only pre-existing ranges. While parts of the statute are indeed directed toward protection of "established shooting range[s]," § 76-9-105(1), MCA, the statute also contains provisions barring the use of state and local laws or policies to "prohibit the establishment of *new* shooting ranges," §§ 76-9-103(2), -104(2), MCA (emphasis added). Thus, the statute has the purpose of protecting the future development of shooting ranges as well.

¶60 To determine whether a statute "authoriz[es]" the offending act, either by "express" authorization or by "necessary implication," *Barnes* explains that the issue is whether it "can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury." *Barnes*, ¶ 20 (quoting *Hassell v. San Francisco*, 78 P.2d 1021, 1022-23 (Cal. 1938)). We labeled this the "*Hassell* test of statutory authorization." *Barnes*, ¶ 21. Under

19

this test, I believe it can be "fairly stated" that the Legislature intended "the doing of the very act" which is alleged to cause the injury here, that being the operation of a shooting range. Section 76-9-101, MCA, states that "[i]t is the policy of the state of Montana" to promote "the safety and enjoyment of the shooting sports" and, more specifically, to protect "the locations of and investment in shooting ranges for shotgun, archery, rifle, and pistol shooting." Thus, I would conclude that the statute authorizes the act in question here by "necessary implication."

¶61     We further explained in *Barnes* that, while "a statutorily authorized activity or facility cannot constitute an *absolute* nuisance as a matter of law, . . . nonetheless, [it] may become a *qualified* nuisance in fact 'by reason of the improper or negligent manner in which it is conducted.' " *Barnes*, ¶ 23 (emphasis added, citation omitted). Thus, even though the act in question cannot be challenged by way of an absolute nuisance claim, it can be challenged as a qualified nuisance claim based upon improper or negligent operation.

¶62     However, Neighbors admit they have pursued only absolute nuisance claims, for both their public and private claims, acknowledging in their briefing that "[f]or the record, the Neighbors have not made a qualified nuisance claim." The parties' arguments about the private nuisance claim are largely about whether the private claims have been separately pled from the public nuisance claim. However, the statutory authorization analysis set forth above applies equally to either a public or private nuisance claim.

¶63     The Court states that the statute here does not evince an "unequivocal [legislative] intent . . . to exempt shooting ranges from civil nuisance liability." Opinion, ¶ 28. However,

20

the test is not whether the authorizing statute unequivocally exempts the activity from nuisance liability. Indeed, the statute at issue in *Barnes* simply authorized the city to establish a storm or sanitary sewerage system, and said nothing whatsoever about nuisance liability, nor contained anything like the devices which protect shooting ranges within the statute at issue here. Nonetheless, we held the actions of the City were not "wholly outside of its statutory authority." *Barnes*, ¶ 28. "Since Thompson Falls' storm drain system was constructed and is maintained under the express authority of § 7-13-4301(1)(a), MCA, Barnes could only prevail on her nuisance claim by proving that Thompson Falls was negligent . . . ." *Barnes*, ¶ 28. The same result should be reached here. The test asks only whether the questioned activity is "wholly outside of its statutory authority." *Barnes*, ¶ 25. If it is not, then a claim for absolute liability cannot be brought.

¶64 Consequently, I believe both the public and private nuisance claims fail, and I would affirm the District Court's dismissal of those claims.

/S/ JIM RICE