FILED

05/19/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0376

DA 25-0376

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2026 MT 109

JAMES "BUCK" MACLAURIN, JR.,

   Plaintiff and Appellant,

 v.

FISCHER LAW, PLLC, d/b/a
Kelby R. Fischer, Attorney at Law,

   Defendant and Appellee.

APPEAL FROM: District Court of the First Judicial District,
       In and For the County of Lewis and Clark, Cause No. CDV-2024-143
       Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      Nicholas LeTang, Passamani & LeTang, PLLC, Helena, Montana

    For Appellee:

      Matthew B. Hayhurst, Tyler M. Stockton, Boone Karlberg, P.C.,
      Missoula, Montana

           Submitted on Briefs: February 25, 2026

              Decided: May 19, 2026

Filed:

        _____
            Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Appellant James "Buck" MacLaurin Jr. (Buck) appeals from the April 18, 2025 Order of the Montana First Judicial District Court, Lewis and Clark County, granting Fischer Law, PLLC's (Fischer) motion to dismiss. We restate and address the following issue:

> *Whether the District Court erred by concluding that Buck did not plead a viable legal malpractice claim.*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In July 1986, Buck, James MacLaurin Sr. (James), and Mary MacLaurin (Mary) were deeded real property in Sheridan, Montana, (the Property) as joint tenants with a right of survivorship. In November 1986, Buck, James, and Mary executed a quitclaim deed conveying the Property to Buck, Dorothy Wardwell, and Mary as joint tenants with a right of survivorship. In January 1987, Buck and Wardwell executed a life estate deed (Life Estate Deed) conveying a life estate to Mary for the remainder of her life. The Life Estate Deed provided Mary "the full use, control, income, possession, enjoyment and occupancy, of [the Property]."

¶4 Wardwell passed away in 2013. In May 2020, Buck retained Fischer to create the J.D.M. Living Trust. On May 21, 2020, pursuant to Fischer's advice, Buck executed a quitclaim deed conveying his interest in the Property to the J.D.M. Living Trust. In

2

December 2022, Mary died and her estate claimed a 50% ownership interest in the Property. Buck sold his 50% interest in the Property after Mary passed away.

¶5 Buck sued Fischer for legal malpractice and requested a declaratory judgment as to the ownership interest that he, Wardwell, and Mary held in the Property. Buck alleged that Fischer's legal advice caused him to sever the joint tenancy and extinguish his right of survivorship by quitclaiming his interest in the Property to the J.D.M. Living Trust in 2020. Fischer moved to dismiss Buck's Complaint pursuant to M. R. Civ. P. 12(b)(6), asserting that the joint tenancy in the Property was already severed by virtue of the Life Estate Deed conveying the life estate to Mary in 1987.

¶6 The parties agreed the dispositive issue was whether the Life Estate Deed severed the joint tenancy. In granting Fischer's motion, the District Court reasoned that the Life Estate Deed severed the joint tenancy and extinguished the right of survivorship because it destroyed at least one of the unities necessary to maintain the joint tenancy. The District Court concluded Buck did not plead a claim upon which relief could be granted because the legal services that Fischer rendered in May 2020 did not cause the severance of the joint tenancy and therefore did not destroy Buck's right of survivorship.

## STANDARDS OF REVIEW

¶7 "We review *de novo* a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6)." *Schoof v. Nesbit*, 2014 MT 6, ¶ 10, 373 Mont. 226, 316 P.3d 831 (citation omitted). The district court's determination of whether a complaint states a claim upon which relief can be granted constitutes a conclusion of law we review for correctness.

3

*Schoof*, ¶ 10. "We accept the complaint's factual allegations as true and consider the complaint in the 'light most favorable' to the plaintiff" when reviewing an order ruling upon a Rule 12(b)(6) motion. *Schoof*, ¶ 10 (quoting *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, LLC*, 2010 MT 63, ¶ 15, 355 Mont. 387, 228 P.3d 1134).

## DISCUSSION

¶8    *Whether the District Court erred by concluding that Buck did not plead a viable legal malpractice claim.*

¶9    Legal malpractice requires the plaintiff to prove four elements that correspond with a common negligence action, including that the professional's failure to comply with his or her duty caused damage to the plaintiff. *Labair v. Carey*, 2012 MT 312, ¶ 17, 367 Mont. 453, 291 P.3d 1160 (citation omitted). The viability of Buck's legal malpractice claim depends on whether Fischer's legal services in 2020 caused Buck to sever the joint tenancy or whether the joint tenancy was already severed because Buck and Wardwell conveyed a life estate to Mary in 1987.

¶10    A joint tenancy is a form of joint ownership where each owner owns equal shares with "title created by a single will or transfer." Sections 70-1-307, 70-20-105(1), MCA. Ordinarily, the joint tenant's ownership interest ceases upon their death, and the interest immediately transfers to the surviving joint tenants. *In re Est. of Garland*, 279 Mont. 269, 272, 928 P.2d 928, 930 (1996) (citation omitted) (right of survivorship). The continuation of a joint tenancy depends on the continued existence of the four unities of interest, title, time, and possession. *See Barrett v. Ballard*, 191 Mont. 39, 43, 622 P.2d 180, 183 (1980)

4

(citing 20 Am. Jur. 2d Cotenancy and Joint Tenants § 16).  Actions that destroy any of the four unities sever the joint tenancy and extinguish the right of survivorship.  *Barrett*, 191 Mont. at 43, 622 P.2d at 183 (citations omitted).  Our Court and other jurisdictions have ascertained whether the joint tenants intended to sever the joint tenancy rather than solely addressing whether the unities have been destroyed.  *See In re Est. of Rickner*, 164 Mont. 51, 55-58, 518 P.2d 1160, 1162-63 (1974); *e.g.*, *Downing v. Downing*, 606 A.2d 208, 213 (Md. 1991) (concluding joint tenant's consent to their joint co-tenant receiving all rent from the property did not indicate an intent to sever).

¶11    Neither party disputes that the 1986 Quitclaim Deed created a joint tenancy in the Property with right of survivorship as to Buck, Mary, and Wardwell.  The parties primarily dispute whether the District Court correctly determined that conveying a life estate to Mary severed the joint tenancy.  Buck argues that the District Court erred by strictly analyzing whether the life estate destroyed the four unities pursuant to *Barrett*.  Buck contends that the District Court should have ascertained the parties' intent because the 1987 Life Estate Deed constituted a "property sharing agreement" that demonstrates the parties did not intend to sever the joint tenancy.  Fischer responds that *Barrett* establishes that Montana applies the four unities to determine whether a joint tenancy has been severed.  Fischer argues conveying a life estate to Mary severed the joint tenancy by destroying the unities of possession, interest, and title.

¶12    We stated in *Barrett* that the law in Montana is that "any act of a joint tenant which destroys one or more of its necessarily coexisting unities operates as a severance of the

5

joint tenancy and extinguishes the right of survivorship." *Barrett*, 191 Mont. at 43, 622 P.2d at 183 (citations omitted). We recognized that a joint tenant still possesses the right and ability to sell their interest in the jointly held property despite these legal consequences. *Barrett*, 191 Mont. at 43-44, 622 P.2d at 183-184 (citations omitted). We applied this principle to conclude that a real estate brokerage contract concerning jointly held property was not void for impossibility. *Barrett*, 191 Mont. at 44, 622 P.2d at 184. We reasoned that the joint owner who signed the contract had the right to sell her interest and could perform the contract despite the fact that the joint co-owner did not sign the contract. *Barrett*, 191 Mont. at 43-44, 622 P.2d at 183. Our holding in *Barrett* did not limit the applicability of the general principles governing the severance of joint tenancies to situations where a joint tenant sells its interest to a third party.

¶13    Buck's and Wardwell's conveyance of a life estate to Mary fundamentally altered the interests that Buck, Wardwell, and Mary held in the Property. Buck and Wardwell conveyed their present possessory interest to Mary and merely retained a reversionary interest that would vest upon Mary's death. *See E.E. Eggebrecht, Inc. v. Waters*, 217 Mont. 291, 294, 704 P.2d 422, 424 (1985) ("A basic element of possibility of reverter is that possession reverts automatically upon the occurrence of an event named in the granting instrument"). The Life Estate Deed provided Mary with "full use, control, income, possession, enjoyment and occupancy" of the Property during her lifetime. Mary could fully enjoy her present possessory interest despite Buck and Wardwell no longer having any present interest in the Property. This contradicts the principle that each joint tenant

6

owns equal shares in jointly held property. *See In re Est. of Garland*, 279 Mont. at 272, 928 P.2d at 930 (joint tenants "own[] equal shares in property"). The District Court did not err by concluding the Life Estate Deed severed the joint tenancy pursuant to *Barrett* because conveying a life estate to Mary at the very least destroyed the unity of interest. *See* 20 Am. Jur. 2d Cotenancy and Joint Ownership § 5, Westlaw (database updated May 2026) (unity of interest means "that the joint tenants' shares are all equal and the duration and quality, legal or equitable, of their estates are the same").

¶14 Buck relies on *In re Estate of Rickner* and persuasive authority to assert that the District Court erred by not ascertaining whether Mary, Buck, and Wardwell intended to sever the joint tenancy. Buck's argument is misplaced for the purpose of arguing that he pled a viable legal malpractice claim.

¶15 *In re Estate of Rickner* addressed whether a contract for deed conveying jointly held property destroyed the joint tenancy as to the sale proceeds. *In re Est. of Rickner*, 164 Mont. at 53-54, 518 P.2d at 1161. The decedent's heir argued that the contract and sale proceeds were incorrectly characterized as jointly held property because the contract for deed severed the joint tenancy. *In re Est. of Rickner*, 164 Mont. at 53-54, 518 P.2d at 1161. We recognized that "'[c]hanging the form of the [jointly held] property is an act unrelated to the holders' status as joint tenants.'" *In re Est. of Rickner*, 164 Mont. at 54, 518 P.2d at 1162 (quoting *Hewitt v. Biege*, 327 P.2d 872, 875 (Kan. 1958)). We concluded the sale proceeds were correctly identified as jointly held property because the contract for deed did not demonstrate the joint tenants intended to sever the joint tenancy and because the

"[m]ere change of form through equitable conversion does not automatically change the nature of the interest." *In re Est. of Rickner*, 164 Mont. at 56-58, 518 P.2d at 1162-63.

¶16 The joint tenancy in *In re Estate of Rickner* effectively transformed a joint tenancy in real property into a joint tenancy in the proceeds from the property's sale. The conveyance of a life estate to Mary did not merely change the form of the Property; it fundamentally changed the type of interest each party held in the Property. The Life Estate Deed converted Buck's and Wardwell's present possessory interest to a reversionary interest while Mary enjoyed a full present possessory interest in the Property for the duration of her life. The District Court did not err by declining to ascertain the parties' intent based on *In re Estate of Rickner* because the conveyance of the life estate fundamentally altered each joint tenants' property interest rather than changing the form of the jointly held property.[1]

¶17 The District Court did not err by concluding that Buck failed to plead a viable legal malpractice claim. Accepting the allegations in the Complaint as true, the legal advice that Fischer rendered in May 2020 could not have caused Buck to extinguish his right of survivorship under the existing law because Buck's right of survivorship was extinguished in 1987 when he and Wardwell conveyed a life estate to Mary.

---

[1] The issue on appeal is limited to whether Buck pled a viable legal malpractice claim based on the controlling principles governing joint tenancies at the time the conveyances were made and the time the legal services were rendered rather than whether this Court should deviate from strictly applying the four unities approach that was established in *Barrett*.

8

**CONCLUSION**

¶18    The District Court did not err by dismissing Buck's Complaint for failure to plead a viable legal malpractice claim.

¶19    We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE